136 So.2d 123 (1961)
Marie Ruby Richard BEGNAUD et al., Plaintiffs and Appellees,
v.
TEXAS & NEW ORLEANS RAILROAD COMPANY et al., Defendants and Appellants.
No. 386.
Court of Appeal of Louisiana, Third Circuit.
December 21, 1961.
Rehearing Denied January 15, 1962.
Certiorari Denied February 19, 1962.
*124 Davidson, Meaux, Onebane & Donohoe, by J. J. Davidson, Jr., Lafayette, for defendants-appellants. E. L. Guidry, Jr., St. Martinville, for defendants-appellants.
Lawrence Simon, New Iberia, for plaintiffs-appellees. Earl H. Willis, St. Martinville, for plaintiffs-appellees. Thomas C. Wicker, Jr., New Orleans, for intervenor.
Before FRUGE, CULPEPPER and HOOD, JJ.
HOOD, Judge.
On February 13,1960, at about 2:35 P.M., a truck owned and operated by Pelican Creamery was struck and demolished at a railroad crossing about one mile east of the community of Cade, Louisiana, by a train owned and being operated by Texas & New Orleans Railroad Company. The accident resulted in the death of the two occupants of the truck, one of whom was Irving Joseph Begnaud, the driver, and the other was Rivers George Sonnier, his helper. Both were employees of Pelican Creamery, and they were acting within the course and scope of their employment when the accident occurred. As a result of this accident three separate damage suits were filed, including the instant suit, all of which were consolidated for the purpose of trial and appeal. The defendants named in each of these suits are Texas & New Orleans Railroad Company, and its employee, L. P. Gaudet, the engineer who was operating the train at the time of the accident.
Plaintiff in the instant suit is the widow of Irving Joseph Begnaud. She demands damages for herself, individually, and as natural tutrix for and in behalf of her two minor children, because of the alleged wrongful death of her husband. Employers' Liability Assurance Corporation, Ltd., the workmen's compensation insurer of Pelican Creamery, intervened in this suit seeking to be reimbursed the amount which it paid to plaintiff as workmen's compensation benefits following her husband's death.
In the companion suit entitled "Hypolite Sonnier et al. v. Texas & New Orleans Railroad Company et al.," 136 So.2d 130 bearing number 387 of our docket, the father and mother of Rivers George Sonnier, deceased, seek to recover damages for the wrongful death of their unmarried son, and also for the pain and suffering of the deceased. Employers' Liability Assurance Corporation, Ltd., the compensation insurer of Pelican Creamery, also intervened in that suit.
The third suit, entitled "Pelican Creamery et al. v. Texas & New Orleans Railroad Company et al.," 136 So.2d 131, bearing number 388, was instituted by Pelican Creamery and its collision (and property damage) insurer, the Employers' Liability Assurance Corporation, Ltd. Plaintiffs in that action seek to recover the value of the dairy truck and its cargo of dairy products, containers and crates. The defendant railroad company reconvened in that suit, seeking *125 to recover from plaintiffs the damage done to its engine as a result of this accident.
The consolidated cases were tried by jury, which resulted in a unanimous verdict for plaintiffs in all three cases, and a rejection of the reconventional demand of defendant railroad company in suit number 388. None of the parties applied for a new trial, and in due course formal judgments were rendered and signed by the trial judge in accordance with the verdict which had been rendered. The defendants have appealed from the judgments which were rendered in all of these cases. Plaintiff-appellee in the instant suit, and plaintiffs-appellees in suit number 387 have answered the appeals taken in those cases, seeking an increase in the damages awarded by the jury.
At or near the place where the accident occurred, defendant's railroad runs east and west through the Community of Cade, in St. Martin Parish. At the same location U.S. Highway 90, a hardsurfaced thoroughfare, also runs east and west, parallel to and about 40 or 50 feet north of the track. The railroad is intersected by three crossings in and near Cade, and the accident involved here occurred at the easternmost of these crossings, about one mile east of that community. The road which forms a part of that crossing is a narrow, gravelled road running south from the highway across the right-of-way and tracks of defendant railroad company.
The evidence establishes that shortly before the accident occurred, the Pelican Creamery truck was being driven by Begnaud in a westerly direction on and along U.S. Highway 90. When it reached the intersection of that highway with the above mentioned gravel road, about one mile east of Cade, the truck was turned to its left, or to the south, and then the driver proceeded to cross the railroad track. While the truck was straddling the track it was struck broadside by defendant's passenger train, the Argonaut, and as a result of this accident the truck and its cargo were demolished and both of the occupants of the truck were killed. Begnaud was killed instantly, and Sonnier survived him by only a few minutes.
Plaintiffs contend that the defendant railroad company was negligent in failing to maintain a safe crossing, and that defendant Gaudet, as the engineer on the train and an employee of the railroad, was negligent in operating the train at an excessive rate of speed, in failing to maintain a proper lookout, and in failing to sound the whistle or bell of the train before reaching the crossing. Plaintiffs, invoking the "doctrine of last clear chance," further contend that the creamery truck had been stalled or stopped on the track for some time prior to the collision, and that the operators of the train, by the exercise of reasonable care, could have avoided the accident after they should have observed the truck in its position of peril.
Defendants deny any negligence on their part, contending that the sole proximate cause of the accident was the negligence of the driver of the truck in failing to maintain a proper lookout, in failing to exercise ordinary care in negotiating the crossing, and in attempting to beat the train to such crossing. They specially deny that the truck was stalled or stopped on the track at any time prior to the collision, but on the contrary they contend that Begnaud negligently drove the truck on the track when the train was approximately 150 feet from it, that the truck did not stop before it was struck, and that it was impossible for the engineer to avoid the accident after it became apparent that a collision would occur. Alternatively, defendants plead contributory negligence on the part of the driver of the truck.
The evidence establishes that the train was being driven in a westerly direction at a speed of 67 miles per hour at the time the collision occurred, and that the operators of the train could have brought it to a stop within a distance of from 1200 *126 to 1500 feet while traveling at that speed. The evidence further shows that the train traveled a distance of 1,629 feet beyond or west of the crossing where the accident occurred before it stopped, and plaintiffs contend that this shows that the brakes were not applied until after the collision had occurred.
The railroad track is straight for a distance of at least one-half mile east of this crossing, and it runs parallel to U.S. Highway 90 for a distance of about 1,534 feet immediately east of such crossing. The north rail of the track at this crossing is 44 feet from the south edge of the paved portion of the highway, and the track there is elevated about three feet above the surface of the highway. After leaving the highway, therefore, it was necessary for the truck to go up a 6.5 per cent grade or incline before it reached the railroad track. There was nothing between the railroad track and the highway east of this crossing, however, which could or should have prevented the driver of the truck from observing the train, or the operators of the train from seeing the truck, at any point within 1500 or 1600 feet before the train reached the crossing.
It had snowed the day prior to the accident, and at the time the collision occurred the weather was clear, but very cold, and visibility was good. The engineer and the fireman on the train testified that the windows of the truck were up just prior to the collision, and it is reasonable to conclude that this is true because of the weather conditions.
There were only three eye witnesses to the accident: L. P. Gaudet, the engineer on the train; Howard W. Swinney, the fireman; and Herman LeBlanc, a disinterested third person who was near the scene of the accident when it occurred.
Gaudet, the engineer, was sitting on the right side of the locomotive as it approached the crossing. He testified that he began blowing the whistle and ringing the bell of the train more than one-fourth of a mile before it reached the point where the accident occurred, that he continued giving these signals until the train collided with the truck, and that the Mars oscillating headlight on the front of the train was burning continuously during that time. He testified that he saw the creamery truck on U.S. Highway 90 when it was onefourth of a mile ahead of him, that he kept his eye on the truck from that time until the accident occurred, and that the truck turned south on the gravel road which led to the accident crossing when the locomotive was above 400 feet from the crossing. He stated that the truck then proceeded at a slow rate of speed, about 15 miles per hour, until it reached the railroad track, and that as soon as Gaudet realized that the driver of the truck did not intend to stop before crossing the track he applied the emergency brakes of the train and caused it to stop. Gaudet testified that the locomotive was approximately 100 feet from the crossing when the truck reached the track, and that the truck did not stop at any time before the accident occurred.
Swinney, the fireman, was sitting on the left side of the locomotive at that time. He testified that he did not see the creamery truck until it had turned off the highway and was traveling in a southerly direction on the gravel road which led to the crossing where the collision occurred. He stated that the locomotive was about 400 feet from the accident crossing when he first saw the truck, and that he did not realize that the driver of the truck intended to proceed across the railroad track until the train was within 150 feet of the crossing. When he first noticed that the truck was about to negotiate the crossing, he called a warning to the engineer and the engineer applied the emergency brakes of the train simultaneously with the giving of this warning.
Herman LeBlanc, the remaining eye witness to the accident, testified that immediately *127 prior to the time the accident occurred, he was driving his automobile in a westerly direction on U.S. Highway 90 at a speed of about 50 miles per hour, that the train overtook and passed him at a point 1,496 feet east of the accident crossing, and that at the time the train passed him he saw the creamery truck stalled or stopped on the railroad track at the crossing ahead. LeBlanc further testified that the train reached the crossing and collided with the truck when the LeBlanc car was at a point 723 feet east of the crossing. He stated that the truck did not move from the time he first saw it stalled on the track, 1,496 feet ahead of the train, until it was struck by the train a few seconds later.
LeBlanc was able to give the exact distances his car was from the crossing at the time the train passed him, and at the time that the collision occurred, because he went to the scene of the accident the day before the trial began and he marked on the highway the point where his automobile was on each of those occasions. A civil engineer then measured the actual distances pointed out by LeBlanc, and in that manner the exact distances were determined.
It is impossibe to reconcile the testimony of the engineer and fireman, on the one hand, and that of LeBlanc on the other. If the truck actually reached and began to cross the railroad track when the train was within 150 feet of the crossing, as stated by Gaudet and Swinney, then it is obvious that the operators of the train could not have avoided the accident after the danger became apparent to them, and defendants would be free from negligence. If the truck, on the other hand, was stalled or stopped on the track when the train was 1,496 feet from the crossing, then it is apparent that the engineer or the fireman could have brought the train to a stop, and thus they could have avoided the accident, after they should have observed the occupants of the truck in their position of peril. The jury apparently accepted the testimony of LeBlanc and rejected that of the engineer and fireman.
Counsel for defendants argue, however, that the jury committed manifest error in accepting the testimony of LeBlanc. They point out that the train traveling at a speed of 67 miles per hour covered 98 feet per second, and the LeBlanc automobile being driven 50 miles per hour moved 74 feet per second. They reason that, with the vehicles moving at the speeds given by LeBlanc, if the train passed the Le-Blanc car at a point 1,496 feet east of the crossing, then it would have been impossible for the train to have reached the crossing when the LeBlanc car was still 723 feet from it. It is argued, therefore, that the train must have overtaken and passed the car when it was 1,019 feet from the crossing, rather than the distance pointed out by LeBlanc, and, as has already been shown, it would have been impossible to bring the train to a stop within that distance. We, however, do not think LeBlanc's testimony has been discredited on the basis of these figures. He obviously was in error as to the speed he was traveling, as to the point where the train passed him, or as to the location of his car when the collision occurred. The fact that LeBlanc later went to the scene of the accident, however, and marked on the highway the exact location of his car when each of these incidents occurred, leads us to believe that his recollection as to the location of his car at each of those times should be more accurate than his estimate of the speed at which he was traveling. Also, if he was inaccurate as to the location of his car at either of these times, it is conceivable that he erred in locating it when the collision occurred rather than when the train passed him. Defendant Gaudet also became confused in some of his estimates because he testified that when he first observed the truck it was one-fourth of a mile ahead of him and the train at the same time was one-fourth of a mile from the crossing, yet he stated that the truck *128 was not near the crossing at that time. It is understandable that witnesses do err in estimating speed and distances, and we see no reason to discredit or ignore the testimony of LeBlanc because a mathematical computation shows that he erred in at least one of his estimates.
Defendants further contend that Le-Blanc's testimony should not be accepted because of contradictory statements which he made to an insurance adjuster shortly after the accident. In that statement, signed by LeBlanc, he stated that the train passed him when he "was about ½ mile" from the scene of the accident, and that he saw the creamery truck stopped or stalled on the railroad track in the middle of that crossing when he was "approximately 700 feet" from it. He further stated that "the first time he saw the Pelican Creamery truck was when it was sitting across the track and the train almost on it," and that he could not state the number of feet but "it was close." Le-Blanc explained that he was not at the scene of the accident when he gave the statement to the adjuster, and for that reason he could not accurately estimate distances, but that the adjuster wrote 700 feet as being the distance he was from the truck when he first saw it stalled, and that he signed the statement as so written. He states, however, that upon going to the scene of the accident later he refreshed his memory and determined from landmarks, and particularly by locating the intersection of the highway with a road leading to a golf course in that area, that his car was 1,496 feet from the crossing when the train passed him, and he recalls that he saw the creamery truck stalled on the track at that moment. He obviously erred in stating to the adjuster that the train passed him when he was one-half mile from the crossing, because the evidence shows that the railroad and the highway do not run parallel to each other at that point. We think LeBlanc's explanation of the discrepancies between his testimony and his earlier statement to the adjuster is reasonable, and we do not think these inconsistencies are sufficient to impeach him or to discredit his testimony.
Plaintiffs point out to us that defendant Gaudet also made a significant statement shortly after the accident which conflicts with his testimony. At the trial Gaudet testified that the creamery truck did not stop or stall on the track before the collision occurred. The coroner, Dr. Ernest Yongue, however, testified that a few hours after the occurrence of the accident Gaudet told him that the truck had "seemed to stall" on the track.
It has been repeatedly held that the court will not set aside the verdict of a jury in a case where the testimony is conflicting, when the testimony of the witnesses, if accepted as credible, is sufficient to sustain the verdict. Roux v. Attardo, La.App.Orl., 93 So.2d 332; Cush v. Griffin, La.App. 2 Cir., 95 So.2d 860; Mire v. St. Paul Mercury Indemnity Co., La.App. 1 Cir., 103 So.2d 553; and Simon v. Texas & New Orleans Railroad Company, La.App. 3 Cir., 124 So.2d 646 (Cert, denied). The members of the jury heard the testimony of the three surviving eye witnesses to the accident, and they were in a position to observe their demeanor while on the witness stand. The jury apparently determined that the accident occurred substantially as related by LeBlanc. In our opinion LeBlanc's testimony, if accepted as credible, supplies sufficient evidence upon which to base a conclusion that the creamery truck was stalled on the track before the collision occurred, and that the operators of the train, by the exercise of reasonable care, could have avoided the accident after they should have seen the truck in its position of peril. Assuming, therefore, that decedents were negligent in attempting to negotiate the crossing when they did, according to LeBlanc's testimony the operators of the train clearly had the last clear chance to avoid the accident. We cannot say that the jury committed manifest error in believing LeBlanc's *129 testimony as to the manner in which the accident occurred, rather than the testimony of Gaudet and Swinney.
Defendants further contend that plaintiffs are barred from recovery because of contributory negligence on the part of the decedents. Counsel point out that the train would require at least 15 seconds to travel a distance of 1,496 feet, and it is argued that this afforded the occupants of the truck ample time within which to get out of the truck and thus to avoid injury. They argue that the last clear chance doctrine is a "twoedged sword," applicable equally to the rights of plaintiffs and defendants. In this case, however, the evidence does not show why the truck stalled, and there is no indication as to why the occupants did not abandon the truck. It is conceivable that during that time the decedents were attempting to get the truck started, that they became panic stricken, or that they actually endeavored to escape and were unable for some reason to to do. The law presumes that the instinct of self-preservation will cause a person to exercise due care and to avoid exposing himself unnecessarily to harm. Simon v. Texas & New Orleans Railroad Company, supra; Lipscomb v. News Star World Pub. Corporation, La.App., 5 So.2d 41; and Kern v. Knight, 13 La.App. 194, 127 So. 133. The burden of proof rests upon defendants to establish contributory negligence on the part of the decedents, and in this case we conclude that defendants have failed to meet that burden.
According to defendants, at least two procedural errors were committed by the trial court which are prejudicial to them and which justify a reversal of the judgments rendered pursuant to the jury verdict. They contend, first, that the court improperly admitted into evidence photographs of the accident crossing taken after repairs had been made at that crossing, some of which photographs they contend were taken from angles which distorted the actual views of the scene. Counsel argue that these photographs were inadmissible because they did not fairly represent the scene of the accident as it existed at the time, and that the pictures were used solely to prejudice the minds of the jurors by implying that the crossing was so dangerous at the time of the accident that it was necessary that it be subsequently repaired. The second procedural error complained of was the ruling of the trial court in permitting Major Edward O. Bauer, Jr., to testify as an expert witness, relating to the hazardous nature of the crossing at the scene of the accident.
The record shows that the trial judge specifically instructed the jury that evidence of changes or repairs to the crossing made subsequent to the accident should not be considered by the jury as showing negligence or as amounting to an admission of negligence on the part of the defendant railroad company. With this instruction, we think defendants could not have been prejudiced by these photographs. Also, the photographs and the testimony of Major Bauer were offered solely to show that the defendant railroad was negligent in failing to maintain a safe crossing. The jury, however, obviously did not base its verdict on a conclusion that the railroad was negligent in failing to maintain a safe crossing, because it found both the railroad company and the engineer liable for damages. The engineer, Gaudet, would not have been liable if the verdict had been based on a finding that the crossing was hazardous. Since the jury apparently did not base its verdict on a finding that the crossing was unsafe, it appears to us that defendants could not have been prejudiced by the admission in evidence of these photographs or the testimony of Major Bauer, even though such evidence may have been improperly admitted.
Another error which defendants allege was committed by the trial judge was his failure to declare a mistrial on *130 the grounds that plaintiffs wept throughout the proceedings in the presence of the jury, and that one of the plaintiffs suffered two violent seizures in the jury's presence. Both sides stipulated during the trial that if the stricken plaintiff's physician were called, he would testify that his patient was afflicted by epilepsy. As to the emotional displays of the plaintiffs during the trial, we find very little mention in the record of this fact, and we find no request by defendants' counsel that the trial judge instruct opposing counsel to attempt to calm his clients. As to the seizures suffered by one of the plaintiffs, the trial judge was in a better position than we are to determine what effect this may have had upon the jury, and we cannot say from the record that he abused his discretion in refusing to declare a mistrial. Defendants have not referred us to any Louisiana authority which could serve as a basis for holding that the overruling of defendants' motion for a mistrial in this case was an abuse of discretion by the trial judge, and we have found no such authority. It appears, however, that the majority rule in common law jurisdictions, where the jury is almost always the trier of fact, is that emotional outbursts, weeping, fainting, etc., on the part of the successful party do not necessarily in and of themselves justify the granting of a new trial. 66 C.J.S. New Trial § 35; 39 Am.Juris. New Trial, Sec. 93.
Finally, the survivors of the decedents, being plaintiffs in suits 386 and 387, have asked in their answers to the appeals in those two suits that the quantum of damages awarded by the jury be increased. After a careful review of the record we conclude that the sums awarded by the jury are fair, and are in accord with awards made in other similar suits. For that reason we feel that an increase in the amounts awarded is not justified.
For the reasons herein assigned, therefore, the judgment rendered by the district court in the instant suit is hereby affirmed. All costs of this appeal are assessed to defendants-appellants.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.