REID, Judge.
This is an action in tort brought by Lee Doty King and Gloria Mae King for the death of their five year old son, Ray Charles King, resulting from an automobile accident which took place on Highland Road near the intersection of East McKinley Street in the Parish of East Baton Rouge, Louisiana, on or about 7:20 P.M. on September 15, 1962. The child was struck by a vehicle operated by the defendant Stanley Marczak Jr. who at the time was a student at L.S.U. He was driving a 1951 Studebaker automobile which he had borrowed from a friend Lemuel Brooks Marshall, Jr. Said vehicle was owned by Lemuel Brooks Marshall Sr. Made defendants in the case were Stanley A. Marczak Jr., the driver of the vehicle; United States Fire Insurance Company, the liability insurer of Lemuel Brooks Marshall, Sr., the owner of the automobile; Springfield Insurance Company, the liability insurer of Stanley A. *635 Marczak Jr.’s mother, Mrs. Edleen Mar-czak; and The Insurance Company of the State of Pennsylvania, the liability insurer of B. R. Gunn, Marczalc’s grandfather.
Plaintiffs contended that since Marczak was driving the automobile with the knowledge and consent of the owner of the automobile, the owner’s insurance policy afforded coverage in this accident. They further contended that inasmuch as the said Marczak resided in the household of his mother and grandfather in Cilbert, Louisiana, the liability insurers of both his mother and grandfather afforded coverage.
Defendants, United States Fire Insurance Company, Insurance Company of the State ■of Pennsylvania, and Springfield Insurance Company, filed answers in the form of general denials, alleging the accident was caused by the negligence of the minor child, arid alternatively, in the event the said Stanley A. Marczak Jr. was found guilty of negligence the plaintiffs were guilty of contributory negligence in failing to exercise proper supervision over the said minor and in allowing him to play at night unsupervised near a heavily traveled road. Said ■defendants further alleged that at the time of the accident the said Stanley A. Marc-zak, Jr. was driving the 1951 Studebaker without permission, either express or implied, of Lemuel Brooks Marshall Sr., and therefore, the insurance policies issued by the defendant insurance companies would not cover the defendant Marczak in this accident.
An answer was filed on behalf of Marfc-zak denying liability and pleading contributory negligence and claiming coverage for Marczak under all three insurance policies.
The case was tried before a civil jury and after six days, on September 24, 1963, a unanimous verdict was rendered for all defendants. Judgment was read, rendered and signed by the Trial Judge on September 26, 1963, in accordance with the verdict of the jury, dismissing the suit against all defendants at plaintiffs’ cost. Plaintiff filed a motion for new trial which was, for oral reasons assigned, denied by the Trial Judge on October 14, 1963. From the judgment the plaintiffs have perfected this appeal.
Although defendants, Insurance Company of the State of Pennsylvania and Springfield Insurance Company, plead contributory negligence of the minor child, Ray Charles King, this plea was abandoned on appeal.
At the time of the accident the defendant Marczak was driving the Marshall Studebaker in a northerly direction on Highland Road which is a four lane highway and is approximately 34 feet wide at the point at which the accident occurred. The accident occurred just south of the intersection of the said Highland Road with East McKinley, a two lane street. The speed limit on Highland Road at the point of the accident is 35 miles an hour. The record discloses that the weather was clear at the time of the accident but there is conflicting testimony as to whether or not the street was still damp as a result of a rain which had occurred earlier in the evening. Street lights are attached to poles on the east side of Highland Road but not on the west side. The child was crossing the street from the west to the east and was struck by the right fender of the vehicle driven by defendant Marczak.
The central issue raised on this appeal is, of cours.e, the alleged negligence of the defendant Marczak. The principal allegation of error raised by the plaintiffs is that the Trial Court erred in failing to find the driver of the vehicle negligent in the operation of the said vehicle and thus liable to the plaintiffs for the death of their child. The four major allegations of negligence set forth in the plaintiffs’ petition and upon which plaintiffs base their case are that the defendant Marczak failed to yield the right-of-way to the said minor child, that he failed to keep a proper lookout, that he was driving at an excessive rate of speed, and that he did not keep the automobile he was driving under proper control. The defense of *636 this case is based upon the proposition that the accident was caused by the minor Ray Charles King running into Highland Road from behind a moving vehicle at night in such a manner that the said driver had no opportunity to observe the child in time to avoid the accident.
The testimony of the various witnesses is conflicting and the case turns upon which witnesses the triers of fact believed.
Marczak testified he was driving at a speed of approximately 30 miles an hour. He stated:
"A: The first indication that I knew something was going to happen was when Ray ran right out in front of the car.
“Q: Where was he when you first saw him ?
“A: Right in front of me.”
ITe further testified the child ran out into the street right behind a car traveling south in the opposite lane of traffic, just after the said car had passed him. He further testified:
“No car passed me until he was almost at the intersection and then after that car passed that is when Ray ran out in front of me.
“Q: When this car passed do you know how far you were from the intersection when it was passing you?
“A: No sir. It was close to the intersection. He ran out from behind the car as soon as it passed.”
Marczak also testified that the street was not well lighted, the only light at the intersection at the time of the accident being one light on the pole on the east side of the street.
Riding with the defendant at the time of the accident was Judith Bell, who at the time of the trial had married and was Mrs. Judith Bell Byles. Her testimony supports that of Marczak. She testified that at the time of the accident they were not engaged in any conversation and when she first noticed the minor child “he was right in front of us on the left side of the car.” She further testified:
“Q: Mrs. Byles, when you saw the child the first time, you say it appeared to be in front of the car? Was it — you saw it from the-headlights of the car?
“A: Right about where the left headlight is.”
Mrs. Byles further testified when she saw the child he was running.
The other eye witnesses to the accidentwere Lee Doty King, Jr., who was 11 years-old at the time of the accident, Donna Marie-King, who was 12 at the time of the accident, two other children of plaintiffs, a Cherry Murray, age 11, and another child,. Wanda Vallery.
Lee Doty King, Jr., testified that the-group of children had stopped on the west side of Highland Road near the point of the-accident and he crossed the Highland Road first. He testified that after he had crossed' the street he saw a car coming from L.S.U. He said he told the children to cross the street after he saw the car was far away-His testimony in this regard is as follows:
“A: I told the children to come on after I saw the car far away and. so they started to walk out.
“Q: Which one did?
“A: All of them. And so they started' to walk out, and so Donna said' no, let’s go back, and my little brother started to walk out of his; step, but before he started to walk out a car passed.
“Q : Passed who ?
“A: Passed him.
“Q : Passed him. One car passed him going which way?
“A: Down toward L.S.U.
*637 “Q: Now, was that one of the cars you had previously seen before you crossed?
“A: Yes sir.
“Q: Which one was that?
“A: That was the first car I had—
“Q: Before you crossed it was how far from you about ?
“A: About two blocks.
“Q: And after you got across the street and you were watching him starting to leave, before he left the same car passed him before they left the curbing?
“A: Yes sir.
“Q: Then go .ahead and tell what happened after that car passed him?
“A: And so after that car passed my brother started to walk out, all of them started to walk out, and Donna stepped back again, my sister, and he kept going and she hollered and told him to stop, and he started to run, running across the street. And about that time when he got in the middle of the yellow line the car was in front of the State Cleaners going past the State Cleaners. And after that when he was going in the third lane the car was going about to the barber shop when he was in the fourth lane the car struck him.”
Concerning the two cars which were traveling south, he stated that as soon as the first car had passed, his brother stepped out into the street and there was a second car coming behind. The boy also corroborated defendant Marczak’s testimony to the effect that at the time of the accident there were no lights in the immediate vicinity other than the street light on the east side of the intersection. On cross examination when questioned about a deposition he had made prior to the trial the boy testified as follows:
“Q : I’m going to read you some of your testimony and I’d like to ask you if this is correct. On page 32 of your deposition.
Question: ‘Who was holding his hand when you crossed the street?” Your answer: ‘My sister was holding his hand.’ Question : ‘Did she continue to hold his hand?’ Answer: ‘Yes sir.’
Question: ‘When was it that he broke away from her ?’ Answer: ‘When she had started — when they had started to go out into the street and she was pulling him back and he broke off.’ ‘Is that when he ran across the road?’ ‘Yes sir.’ Is that substantially correct ?
“A: Yes sir, somewhat.”
Donna Marie King testified the only light in the immediate vicinity was the light on-the east side of Highland Road. Her testimony in regard to the accident was similar to that of her brother Lee Doty King, Jr., and to a great extent she corroborated the-testimony of the defendant Marczak.
“Q: Did this brother, Lee Doty, cross before anybody else?
“A: Yes.
“Q : Had he completed his crossing before any of the other children started across ?
“A: Yes.”
“Q : All right. Then after he crossed what did you all do?
“A: Well, after he crossed, me and Cherry we were still talking and then all of us turned around to cross. Well, when we got ready to cross my little brother, Ray, he was going across and I reached, for him and he got away from me, *638 and when he got out, when I stepped out to grab him a car was coming so I stepped back. It was going toward L.S.U. and when I hollered for him he started to run and then he went on across. Well, just before he got on the curb that’s when the car hit him.”
She also testified that her brother Ray had gone out into the street after the first •of the two southbound cars had passed, and •as shown in the testimony, it was because •of the second southbound car that she was unable to grab him.
Cherry Gail Murray was called as a witness by the defendants. Her testimony ■given at tire trial and that given in the pretrial deposition were at variance and so her deposition was introduced with the Trial Judge’s approval for the purpose of impeachment. However, her testimony concerning the minor child running across the •street confirms that given by the other two ■children. She, too, stated that after the 'first southbound car passed, the minor child darted out behind it, after jerking away from his older sister’s reach, and ran across the street. Cherry testified at the trial that there were no lights in the vicinity of he accident other than the street light suspended from a pole on the east side of Highland Road. Although the testimony of the three children is on some points at variance with that of the defendant and Mrs. Byles, his guest passenger, it corroborates their testimony to such a degree that this Court cannot say the jury was in error in finding the accident happened as contended by the defendants.
In regard to the question of speed, all of the evidence introduced at the trial indicates the defendant Marczalc was not driving in excess of the legal speed limit of 35 miles per hour. The defendant testified he was driving at approximately 30 miles an hour. Officers Don Posey and Jimmy Smith of the Baton Rouge City Police testified there was no indication the defendant had been speeding. Officer Posey established that the Studebaker left 34 feet of skid marks on Highland Road, which marks commenced 8 feet north of the approximate point of impact. David J. Keyser, a former member of the Louisiana State Police, testified for the plaintiff as an expert on speed and stopping distances. He said 34 feet of skid marks would indicate that the vehicle had been going anywhere from 24 up to 34 miles an hour and not over 35 miles an hour. It is, therefore, apparent from the record, and the jury must have so found, that there was no speeding on the part of Marczak.
A point upon which there was much variance of testimony at the trial was the question of the illumination of the area where the accident occurred. This point is relevant in connection with plaintiff’s contention that the driver was negligent in failing to keep a proper lookout and that he saw or should have seen the minor child in ample time to have avoided the accident. Officer Posey testified the area was not well lighted and stated the area at the time of the accident was not as well illuminated as it was at the time of the trial. He further testified that a light only on the east side would not light up both sides. This testimony was corroborated by Lt. George L. Johnston of the Baton Rouge City Police who testified as follows:
“Q: Now, I’ll show you a diagram that’s already in evidence, stipulated as a scale drawing at the scene of the accident. I’m pointing now to the southwest corner of McKinley and Highland, and I’m pointing now to a telephone pole and to a mark ‘A’ right north of it. Now assume, Officer, that when you came out there and you were driving your car northward, how close would you have to get to point ‘A’ before you could see a pedestrian standing by that post? If you can tell us, tell us, if you can’t, say so.
“A: Yes, sir. In my own opinion, and I’ve drove up and down that street *639 quite a bit, I live there, I live out that way, coming north, traveling on the east side of Highland Road, all the lights are on the east side of Highland Road, and they are cither every pole or every other pole has a light on it, and going into the light and into the dark, flashing into your eyes, I’d say that you’d have to get within forty to fifty, maybe fifty-five feet before you could see anybody standing on this corner where you designated ‘A’.”
As prevoiusly shown, the three children testified that at the time of the accident the only illumination was from the light on the east side of the roadway. Although the policemen who investigated the accident stated there were lights on at a snowball stand at the time they arrived, which was approximately 30 minutes after the accident the children testified the snowball stand was closed.
Both plaintiffs and defendants introduced photographs taken by expert photographers showing the illumination of the scene. The photographs are conflicting. However, when considering all of the evidence concerning the visibility at the time of the accident, and the testimony of the children to the effect that Ray Charles King darted out from behind a passing vehicle directly into the path of Marczak, it cannot be said the verdict of the jury is erroneous and should be overturned by this Court.
It is well established that a court will not set aside the verdict of a jury in a case where the testimony is conflicting, where the testimony of the witnesses, if accepted as credible, is sufficient to sustain the verdict. Begnaud v. Texas & New Orleans Railroad Company, La.App. 3 Cir., 136 So.2d 123; Renz v. Texas & Pacific Railway Company, 138 So.2d 114 (1962).
Certainly there is ample testimony in this case to sustain the jury’s verdict. The plaintiffs cite many authorities with which this Court has no quarrel. However, it is the opinion of this Court that the cases cited therein do not fit the facts as found by the jury in this case. This Court in Tyson v. Jackson, 118 So.2d 503, said that there was no negligence on the part of a defendant driver who was proceeding within the speed limit and keeping a proper lookout when a young hoy suddenly darted into the path of his vehicle from behind a car which had just passed. There is no question hut what the finding of the jury in the instant case based upon the evidence presented to them brings this case within the finding of this-Court in the Tyson case. See also Hill v. Delta Fire & Casualty Company, La.App., 110 So.2d 743.
For the above and foregoing reasons the judgment of the Trial Court is affirmed.
Affirmed.