FRUGÉ, Judge.
Mr. and Mrs. Clarence Blanchard brought suit in the district court against Southern Farm Bureau Casualty Company, insurer of a pickup truck which collided with the Blanchard family automobile being driven by Mrs. Blanchard. The truck was owned by Alton Lavergne and was operated with his permission at the time of the accident by Floyd J. Lavergne. The trial judge found that the driver of the Lavergne truck was negligent and that his *368 negligence was the proximate cause of the collision between the two vehicles. Judgment was rendered granting the plaintiff-husband $603.55 special damages for medical and hospital expenses and damages to the community vehicle; and $670.00 for expenses the husband incurred in hiring a housekeeper to perform household tasks while Mrs. Blanchard was incapacitated. The trial court awarded Mrs. Blanchard a total of $4,200.00 for what the attending physician characterized as “a moderate fascio myoligamus injury to the cervical thoracic and lumbar area of the back,” and a conversion neurosis allegedly caused or aggravated by the accident. The defendant insurer has appealed, alleging that the trial court erred in holding that his negligence was the proximate cause of the accident and in failing to find that the plaintiffs were barred from recovery because of Mrs. Blanchard’s contributory negligence. In addition, the defendants urge that the trial judge erred in awarding separate amounts for physical pain and suffering and for the conversion neurosis, and that a total award of $3,000.00 should be substituted for the aggregate award of $4,200.00. On the other hand, the plaintiffs-appellees contend that the damages awarded by the lower court are inadequate and that the amount should be increased to a total of $8,726.45.
The accident in which Mrs. Blanchard was injured occurred at an intersection of a small gravel farm road running generally north and south, with U. S. 190, a main east-west highway connecting the cities of Eunice and Opelousas in St. Landry Parish. The plaintiffs allege that the Blanchard automobile, operated at the time by Mrs. Blanchard, was traveling east toward' Opelousas on Highway 190. As she neared the gravel road, she slowed her vehicle and gave a hand and mechanical signal for a left turn onto the gravel, intending to travel north to a friend’s house located on that road. At this time she noticed the Lavergne truck, with Mr. Lavergne at the wheel, parked parallel to Highway 190, facing west in the parking lot of Fitzgerald’s store, which is located in the northeast quadrant of the intersection. As she turned left into the gravel road, Mrs. Blanchard admittedly “cut the corner”, that is, she turned short of the center of the intersection in apparent violation of R.S. 32:101. Mrs. Blanchard testified that before the rear of her vehicle left the paved portion of the highway she observed the Lavergne truck, at a distance of five to ten feet from her car, moving across the gravel road and nearly parallel to Highway 190 in a westerly direction. The two vehicles collided at a slight angle from the headon position, the left front fender of the truck meeting the left fender and headlight of the Blanchard automobile. Plaintiffs contend that the Lavergne truck was still moving at the time of the collision and that, having seen Mrs. Blanchard slowing for a left turn onto the gravel road, Mr. Lavergne was clearly negligent in driving onto a public road in violation of R.S. 32:124.
The defendant, admitting that Mr. La-vergne saw Mrs. Blanchard as she was preparing to turn left, avers that the La-vergne truck had safely crossed the northbound lane of the gravel road and was in a stationary position in the southbound or west lane of the gravel road at the time of the collision. The defendant further contends that the point of impact was entirely within the southbound lane of the gravel road and that the collision resulted solely from the fact that Mrs. Blanchard “cut the corner” in turning left onto the gravel road.
From the foregoing it is apparent that the responsibility for this accident hinges upon the determination of two factual issues, namely, whether the Lavergne vehicle was moving or stationary at the time of the collision, and whether the collision occurred in the northbound or southbound lane of the gravel road. If the record establishes that the Lavergne truck was stopped at the time of impact in its proper lane on the gravel road and that the collision between the Blanchard automobile and the truck actually occurred in that *369 lane, then the conclusion is inescapable that the plaintiff’s violation of the left turn statute, R.S. 32:101, was the proximate cause of the accident.[1]
If, however, the record reflects that the Lavergne truck was, at the time of the collision, moving across the northbound lane of the gravel road and that the collision actually occurred wholly or partially within that lane, then the Lavergne vehicle’s failure to observe R.S. 32:124 (regulating vehicles entering highways from private premises) will constitute the proximate cause of the accident.[2]
The testimony of five different witnesses must be considered in an effort to reconstruct the essential facts of the accident.
Floyd Lavergne, the driver of the pickup truck, testified that he saw Mrs. Blanchard slowing her vehicle as she neared the intersection and that he pulled out across the gravel road into the southbound lane and stopped, and that, though the rear of his truck might have been projecting slightly into the northbound lane, the front fender where the impact occurred was wholly within the southbound or proper lane. He stated that he did not see the left turn signal given by Mrs. Blanchard but did not deny that such a signal was given.
Eddie Fitzgerald, owner of Fitzgerald’s Store, was hanging drapes in the picture window of his house located across the gravel road from Fitzgerald’s Store and fronting on the north side of Highway 190 Mr. Fitzgerald said that he observed Mrs. Blanchard as she negotiated the left turn and that when the collision occurred between the two vehicles the Lavergne truck was stationary in what he thought was the southbound lane. On cross examination, however, the witness admitted that his estimate of the position of the truck at the time of impact was speculative since his attention was focused on the vehicles themselves and not their relative positions in the road.
Carroll Fitzgerald, Eddie Fitzgerald’s son, was working at the adding machine in the Fitzgerald store when the accident occurred. Unfortunately, he did not observe the actual impact and therefore his testimony is of little value in determining the position of the vehicles just prior to the collision.
Mrs. Blanchard, though unable to concretely fix the point of impact in the gravel road, testified repeatedly that the pickup truck driven by Floyd Lavergne was moving across her lane when she first saw it at a distance of five to ten feet and that at the moment of collision the truck was still moving in a direction almost parallel to Highway 190 (Tr. 124 and 166).
The state trooper who investigated the accident arrived on the scene some five minutes after the collision occurred and, of course, was unable to give testimony as *370 to whether or not the truck was stopped at impact. He did testify, however, that the force of the collision locked the left front wheel of the pickup truck and that the locked wheel left a 15-foot drag mark in the gravel, beginning in the center of the road and proceeding in a west-northwest direction to the west side of the road. From the testimony of the parties at the scene and the physical evidence just enumerated, the trooper concluded that the point of impact was near the center of the gravel road and that the truck must have been straddling both lanes at the moment of impact.
The trial judge, who, of course, had the best opportunity to observe and evaluate the testimony of the witnesses, decided the issue in favor of the plaintiff, for he held that the proximate cause of the collision was the failure of the driver of the truck to yield the right of way in crossing the public road from a private lot. We feel there is ample evidence in the record to support such a finding, especially in view of the plaintiff’s testimony that she and two of the 'defendant’s witnesses, the Fitzger-alds, were “enemies” because of a misunderstanding over an amount due on a grocery bill. This fact, coupled with the inability of the Fitzgeralds to give meaningful testimony as to the actual occurrence of the accident, leaves us with only the directly conflicting versions of Mr. Lavergne and the plaintiff, and the supplementary testimony of the state trooper. The trial judge in reaching his decision resolved this conflict in favor of the plaintiff and we cannot say that he was manifestly erroneous in this determination, for as we so recently said in Richard v. National Union Fire Insurance Company of Pittsburgh,
“In the final analysis, our decision is based on the fundamental rule of appellate review that a factual determination of a trial judge or jury will not be disturbed in the absence of manifest error. And this rule is particularly applicable where the testimony is conflicting and the trial court must evaluate the credibility of the witnesses. Rhodes v. Sinclair Refining Company, 195 La. 842, 197 So. 575; Begnaud v. Texas & New Orleans Railroad Company, La.App., 136 So.2d 123; King v. United States Fire Insurance Company, La.App. 169 So.2d 634.” 189 So.2d 462, La.App. 3 Cir., 1966.
The defendants in their brief point out numerous inconsistencies in the reasons for judgment given by the trial judge. These errors are minor, consisting mainly of errors in direction, a highly complicated matter in this case. We do not feel that these errors are substantial or important enough for this court to hold that “the trial judge simply forgot many of the important facts,” as the defendant contends. On the whole, we feel that the determination of the trial judge on the issue of liability is-correct and should remain undisturbed.

Quantum

On the issue of quantum the defendant does not contest the amount or propriety of the award of special damages to the husband, nor does it contend that Mrs. Blanchard was guilty of malingering or pretense with regard to the conversion neurosis of which she complains. Defendant urges only that the trial judge erred in awarding separate amounts for physical pain and suffering and for mental pain and suffering (the conversion neurosis). In support of this contention the defendant cites Frechou v. Young, 179 So.2d 698, La. App. 4 Cir., 1965, as authority for the proposition that compensation for physical pain and a resultant conversion neurosis must be considered together since it is impossible to tell at what time the back pain ceased to be caused by the physical injury and became due to the neurosis.
Although the court in the Frechou case expressed the opinion that a single $3,000.00 award was sufficient to compensate the plaintiff for both physical and psychiatric suffering, the case certainly does not re *371 quire that trial judges give single aggregate rather than itemized awards under the sanction of appellate reversal.
In the past, awards for conversion neurosis have been both included in and separated from the award for physical injury. See True v. McDonald, 165 So.2d 582 (La.App. 1 Cir., 1964), and Humphries v. Delta Fire & Casualty Co., 116 So.2d 130 (La.App. 1 Cir., 1959). We feel that this is a matter best left to the wide measure of discretion accorded the trial judge in the assessment of damages, and we can see no valid reason why, as a proposition of law, the award for physical injuries must be lumped together with that given for a conversion neurosis, or vice versa.
The plaintiff, in answer to the appeal, asks this court to review the award of $4,200.00 given Mrs. Blanchard by the lower court and to increase the amount of this award to approximately $8,700.00. According to the deposition of the examining psychiatrist, Dr. John Fisher, Mrs. Blanchard reported symptoms as follows: marked insomnia, loss of appetite, marked irritability and social withdrawal manifested by a loss of interest in her usual friendships, depression, crying spells, numerous nightmares of catastrophic variety, some of which were a re-living of the accident in which she was involved in 1962. In addition, Mrs. Blanchard reported that she lacked the courage to perform her ordinary household tasks and suffered from frequent acute anxiety attacks, manifested by sudden feelings of impending disaster. Dr. Fisher in his deposition stated that in a later interview Mrs. Blanchard reported that she was sleeping better and eating better but that she was still quite nervous, and that there had been mild to moderate lifting of the depression. Dr. Fisher declined to advance an opinion as to Mrs. Blanchard’s chances for complete recovery as such, stating that some of these cases recover spontaneously while some remain emotionally crippled indefinitely.
In view of the medical testimony as a whole and the improvement shown by Mrs. Blanchard at the later examination, we feel that an award of $3,000.00 for the conversion neurosis and $1,200.00 for physical pain and suffering is neither excessive nor inadequate under the circumstances.
For the reasons assigned, the judgment of the district court is affirmed at appellant’s cost.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.

. “Left Turns on Two-Way Roadways. At any intersection where traffic is permitted to move in both directions on each roadway entering the intersection, an approach for a left turn shall be made in that portion of the right half of the roadway nearest the center line thereof and by passing to the right of such center Kne where it enters the intersection and after entering the intersection the left turn shall be made so as to leave the intersection to the right of the center line of the roadway being entered. Whenever practicable the left turn shall be made in that portion of the intersection to the loft of the center of the intersection.” See also McCandless v. Southern Bell Telephone & Telegraph Co., 239 La. 983, 120 So.2d 501 (1960); Emmco Insurance Co. v. California Co., 101 So.2d 628 (La. Orl.App.1958), and authorities cited therein.

. “The driver of a vehicle about to enter or cross a highway from a private road, driveway, alley or building, shall stop such vehicle immediately prior to driving onto a sidewalk or onto the sidewalk area extending across any alleyway or driveway, and shall yield the right of way to any pedestrian as may be necessary to avoid collision, and shall yield the right of way to all approaching vehicles so close as to constitute an immediate hazard.”