RAINOLD, Judge.
This suit arose as a result of an automobile collision which occurred on August 7, 1964 when a car driven by Mrs. Estelle Slay was struck in the rear by one operated by Bruce Hemstead at the intersection of U. S. Highway 61 and Fairway Drive in Jefferson Parish, Louisiana. Defendants are Mr. Hemstead and his .insurer, Allstate Insurance Company. Plaintiffs are Mrs. Slay, suing to recover for her personal injuries, and Mr. Slay for losses suffered by the community including medical expenses, both past and future, loss of earnings by Mrs. Slay and automobile damage.
The trial judge awarded Mrs. Slay $9,000.00 for pain and suffering, and Mr. Slay $6,572.25 special damages. Defendants admit liability, but appeal asking for a decrease in the award to $3,500.00, and plaintiffs answered the appeal asking for an increase to $36,452.25.
First we will consider Mrs. Slay’s personal injuries and then special damages which are in dispute. (Hereinafter reference to plaintiff will be to Mrs. Slay alone.) The day after the accident plaintiff consulted Dr. Mary Beaman, a general practitioner, complaining of pains in her back, shoulder and stomach. On the second visit her pain was so severe that Dr. Beaman referred plaintiff to Dr. George C. Batta-lora, Jr., an orthopedist, who found muscle spasm in the lower back. However, he found plaintiff completely recovered from an orthopedic standpoint about eleven weeks after the accident although she still complained of pain. Plaintiff last saw Dr. Battalora on February 17, 1965 at which time he suggested that she see a psychiatrist because, in his opinion, she had a traumatic neurosis. Dr. Beaman, who discharged the patient in May of 1965, also found no objective symptoms for plaintiff’s complaints of pain and also suggested that she see a psychiatrist. In July of 1965 plaintiff did consult a psychiatrist, Dr. Tarvar H. Butler, *720 who was still treating her through the time of trial. Both Dr. Butler and Dr. Marvin F. Miller, the consulting psychiatrist, agreed that plaintiff was suffering from a traumatic neurosis caused by the accident. Defendants’ main answer to this contention is that plaintiff’s neurosis was caused by the menopause, years of hard work, financial problems, and worry over her husband’s illness and various disappointments in connection with her children. Defendants rely heavily on a statement made in Dr. Miller’s report which was as follows :
“Her back figuratively aches from all the strain she has borne all these years.”
However, this sentence was taken out of context, as the entire report and his testimony reveal Dr. Miller was of the opinion that it was the accident which caused the backache symptom to manifest .itself. He testified that until the accident her feelings about life’s frustrations were controlled and dormant and that the accident made her lose control and develop a psychoneurosis. Dr. Butler gave his reasons for concluding there was a causal connection between the accident and the traumatic neurosis as follows:
“A. The reasons for my diagnosis were first of all that she [plaintiff] had this physical complaint of pain that I mentioned earlier, because of the time of the onset of it that because she gave a history of increased anxiety immediately subsequent to the accident and lasting until this date, because she gave a history of personality changes in that she became socially withdrawn, unable to enjoy the same types of relationships, socially that she had formerly had, became more irritable at home and with people outside her home and didn’t get along with her husband as well as she had. Having had none of these complaints to a significant degree before the accident, she also gave a history of compulsive eating since the accident, a number of nightmares, some loss of self-esteem and frequently recurrent insomnia. She had also not complained of these things before the accident. These things did not have significance to her to the best of her memory. They didn’t exist as problems to her.”
The trial judge in his reasons for judgment gave an accurate and complete summary of the testimony of both Dr. Miller and Dr. Butler as follows:
“In summing up his diagnosis on cross-examination, Dr. Miller stated that Mrs. Slay was experiencing a psycho-neurotic reaction and that in terms of the history he obtained from her and from the medical reports that had been given him from the other doctors, this psycho-neurotic reaction followed in time the accident in question and in time of causality, or the accident contributing to the psycho-neurotic reaction, he felt there was a causal relationship existing between the psycho-neurotic reaction and the accident. When asked by counsel for defendant upon what he based this opinion, Dr. Miller stated that he based it, in part, on the history Mrs. Slay gave him to the effect that before the accident her functions were being performed efficiently; that he based it further on data she gave him concerning her behavior following the accident; that he based it also on the change she described in her functioning after the accident, and that he based it on the information contained in the medical reports of the other doctors. Stating it another way, Dr. Miller said that there occurred, in his opinion, a change in the way Mrs. Slay functioned psychologically after the accident and, in his opinion, the quality of this change was a psycho-neurotic change (and the rest of his testimony left no doubt in the mind of the Court that this change was brought on, in his opinion, by the accident). When asked by counsel *721 for defendant what was neurotic about Mrs. Slay, Dr. Miller stated it consisted of anxiety, tension, reduction of sexual activity, inability to control her feelings, a tendency to over-react, to be irritable, etc. When questioned by counsel for defendant as to the possible effect of a delayed menopause in Mrs. Slay at this time, Dr. Miller agreed that menopause does, at times, result in certain abnormalities such as anxiety, depression, etc., but that Mrs. Slay’s complaints up to the time of the accident were not severe enough to interfere with her normal functioning (and therefore the Court concluded that Dr. Miller did not feel that menopause was a contributing factor in this case).
“Dr. T. H. Butler, the treating psychiatrist, also testified on behalf of plaintiff. Whereas the Court was not too impressed with Dr. Butler’s qualifications, particularly considering the fact that for no apparently good reason, he had never taken the Psychiatric Board examinations, nevertheless, the Court found no reason to question the authenticity or the reasonableness of Dr. Butler’s testimony. It was never contradicted in any way by defendant, it was corroborated by Dr. Miller and the Court must take into consideration the fact that Dr. Butler had been treating Mrs. Slay continually since July, 1965. Dr. Butler, like Dr. Miller, also testified that, in his opinion, Mrs. Slay was suffering from a psychoneurosis and in answer to cross-examination by counsel for defendant, Dr. Butler stated that a psycho-neurosis can be produced by an accident or it can be induced as a reaction to an accident; that in Mrs. Slay’s case he felt that it was a reaction to an accident and that he felt that it came about as the result of the accident. When asked what was the reason for his diagnosis of psychoneurosis, Dr. Butler stated it was because of Mrs. Slay’s physical complaints of pain, because she gave a history of increased anxiety immediately after the accident and lasting until the present time, because she gave a history of personality changes, because she became socially withdrawn, because she became more irritable, because she had become a compulsive eater, had nightmares, suffered loss of self-esteem, and frequent insomnia — and because before the accident she didn’t have any of these symptoms or problems —and because there were no organic maladies existing in Mrs. Slay to explain these things. As to the question of whether the delayed menopause influenced Mrs. Slay, Dr. Butler stated that he had serious doubts that this contributed to her symptoms because she had a hysterectomy several years ago and normally one would not look for the same organic change to be taking place at this time. Dr. Butler further testified, still on cross-examination, that he did not get the impression from examining or treating Mrs. Slay that she was inclined towards neurosis prior to the accident, that he did not think that she was more likely to develop a psycho-neurosis because of her background than other people.”
The trial judge also pointed out that the defendants produced no countervailing medical evidence but attempted to rebut plaintiff’s case by what he termed “unproven theories” about the neurosis being caused by such factors as the menopause and past incidents in her life. We find that the trial judge’s interpretation of the medical evidence is correct and led him to the proper conclusion that the traumatic neurosis was caused by the accident.
With regard to quantum, the trial judge gave an excellent and extensive comparison of the pertinent cases. First he considered those in which the awards ranged from $12,000 to $20,000. In Humphries v. Delta Fire & Casualty Company, 116 So.2d 130, La.App., $12,000 was awarded for traumatic neurosis. However, the plaintiff had considerable objective symptoms such as muscle *722 spasm, rigid and tense body posture, shaky and tremulous limbs and her face quivered with tics and twitches.
In Faslund v. Kendrick, La.App., 169 So.2d 276, a $20,000 award was made for both pain and' physical suffering as well as physical trauma. However, plaintiff in the cited case, in addition to facial lacerations, suffered a permanent 35% to 40% disability of the right arm.
In Allen v. Indemnity Insurance Co. of North America, La.App., 137 So.2d 110, another award of $20,000 was given for both physical and emotional injuries, but in the Allen case, the plaintiff suffered a brain concussion, was hospitalized frequently after the injury, and required shock and insulin treatments. The trial judge found that in the above cases, the physical injuries and the physical manifestations of emotional injuries were greater than in the instant case.
Next he considered cases in which the quantum was considerably lower. In LeJeune v. United States Fidelity & Guaranty Co., La.App., 105 So.2d 327, the plaintiff was awarded $3,500 for a back injury intensified by emotional problems aggravated by the accident. However, in that case the plaintiff was only suffering from what the psychiatrist termed “reactive mental depression” and responded satisfactorily to treatment.
In Seegers v. State Farm Mutual Automobile Ins. Co., La.App., 188 So.2d 166, there was an award of $5,000 for injuries for cervical and dorsal sprain, abdominal discomfort, and the conversion reaction. The trial judge in the instant case noted that automobile damage in the cited case amounted to only $8.88, indicating a very slight impact, and that the plaintiff consulted a psychiatrist only three times.
In Frechou v. Young, La.App., 179 So.2d 698, the plaintiff was awarded $3,000 for a conversion neurosis. However, she consulted a psychiatrist on only two occasions and at the trial no psychiatric therapy treatment was recommended.
Also in Blanchard v. Southern Farm Bureau Casualty Ins. Co., La.App., 191 So.2d 367, in which $3,000 was awarded for conversion neurosis, the plaintiff had improved considerably at the time of the trial and there was no evidence that further psychiatric treatment was indicated.
The trial judge concluded that in the above cases in which awards ranged from $3,000 to $5,000, the emotional disturbance was not nearly so severe as that in the instant case.
Under all the circumstances and the jurisprudence, we find that the trial judge’s award of $9,000 for traumatic neurosis was neither inadequate nor excessive.
Defendants object to the following special damages: (1) the medical expenses for the psychiatric treatment. From the record it is clear plaintiff required psychiatric treatment after the accident and will require such treatment in the future.
(2) Loss of earnings. The trial judge awarded $22.00 a week for 140 weeks, or $3,080.00 for this item. Defendants challenge this award on two bases. The first is that plaintiff and her husband did not report the entire amount of their income on the federal income tax returns. Secondly, in a deposition taken before trial, plaintiff testified that she suffered an $80.-00 a week loss as a result of the accident, a loss that cannot be substantiated. However, the trial judge was justified in fixing the loss of wages as he did because the figures were substantiated by plaintiff’s employer, Mr. Charles Orlando, owner of the cleaning establishment for which plaintiff works. He testified that previous to the accident, plaintiff was able to work at the counter of his cleaning establishment, do some laundry work and alterations. Now at home she is only able to do a limited *723 amount of alterations on a piece work basis which accounts for the decrease in her income. He also testified that she was a good worker previous to the accident and said that she could not return to full time work because of the pain which she was suffering. However, we note a mathematical error in the award. The trial judge found plaintiff was earning $40.50 per week before the accident and approximately $17.50 thereafter. Thus the difference was $23.00 per week rather than $22.00 per week. Therefore we will increase the award by $140.00 to a total of $3,220.00.
(3) The $1,040.00 award for future psychiatric treatment. In this regard Dr. Butler testified that the very minimum psychiatric care which plaintiff would require was two visits per week for 26 weeks, the amount awarded by the trial judge. Defendants contend that this amount is excessive because plaintiff was not being treated by Dr. Butler as frequently as twice a week as reflected by his bills. It is true that at the beginning of the course of treatment the visits were relatively infrequent. However, during the last six months before the trial — March 22, 1965 until September 22, 1966 — the record reveals that plaintiff was seen by Dr. Butler 42 times or approximately seven times per month. Therefore we do not feel this award is excessive.
In their answer to the appeal plaintiffs point out that the award to Dr. Butler should be increased because it is less than the award stipulated between counsel. The record reveals that Dr. Butler’s bill was stipulated at $1,495.00 and the award actually made was $1,285.00. Therefore we will increase this award to $1,495.00. Thus special damages are increased from $6,572.-25 to $6,922.25, making a total award of $15,922.25. As amended, the judgment appealed from is affirmed; defendants to pay all costs in both courts.
Judgment amended and affirmed.