287 So.2d 629 (1973)
Nedra Francois CALLAHAN et al., Plaintiffs-Appellees,
v.
TOWN OF BUNKIE, Defendant-Appellant.
No. 4373.
Court of Appeal of Louisiana, Third Circuit.
November 30, 1973.
Rehearing Denied January 21, 1974.
Writ Refused March 8, 1974.
*630 Gold, Hall, Hammill & Little by James D. Davis, Alexandria, for defendant-appellant.
David A. Sheffield, Alexandria, for plaintiffs-appellees.
Before FRUGE, MILLER and DOMENGEAUX, JJ.
*631 FRUGE, Judge.
This action arises out of a tort suit instituted by plaintiffs, Nedra F. Callahan, Murphy J. Francois, James V. Francois, and Donald J. Francois, against defendant, the Town of Bunkie, for damages arising out of a single automobile accident which claimed the life of their mother, Mercy Aymond Francois. This cause was tried to a jury which ultimately found against defendant and in favor of plaintiffs in the following amounts: Nedra F. Callahan, general damages in the sum of $5,000.00 and special damages in the amount of $3,454.25; Murphy J. Francois, general damages in the sum of $3,500.00; James V. Francois, general damages in the sum of $3,500.00; and Donald J. Francois, general damages in the sum of $3,500.00. The jury found the Town of Bunkie negligent in causing the accident and consequential death of Mrs. Murphy Aymond Francois and also held the decedent free from contributory negligence. From this verdict, the defendant has appealed. We affirm.
Defendant has asserted several specifications of error as a basis for this appeal. We shall consider the merit of each in our analysis and evaluation of the record subject to our review. The first specification alleges the trial court's error in failing to declare a mistrial on the grounds that in plaintiffs' opening statement reference was made to remedial repairs undertaken subsequent to the accident at the accident site. The second specification is predicated upon the trial court's failure to grant defendant's motion for a new trial on the ground that a jury trial is not authorized against a public body. The third alleged error is in reference to the failure of the trial court to grant a new trial on the basis that the jury's verdict was contrary to the law and the evidence presented in the case. A full treatment of these alleged errors requires that they be studied in accordance with the following factual circumstances.
Plaintiffs' mother, the decedent, lived in the last block of Marshall Street which was located within the corporate limits of the Town of Bunkie. Significantly, Marshall Street going south intersects with Louisiana Highway 115, whereas several neighboring parallel streets do not. These other streets terminate at the northern edge of a ditch adjacent to Highway 115. This ditch was approximately 3 to 6 feet in depth and 16 feet in width.
The decedent's home was situated north of the ditch on Marshall Street and two blocks over from the site of the accident which was on one of the aforementioned parallel streets, namely South Sewell Place. The hard-surfaced section of South Sewell Place terminates approximately 103 feet north of the ditch involved. It is also noted that Vine Street intersects the aforestated parallel streets one block north of the ditch and Louisiana Highway 115.
South Sewell Place is separated from Marshall Street by Matthew Street, a parallel street which runs between them. With these locations in mind, it is further important to note that at the intersection of Vine and South Sewell Street, a deadend sign is positioned in the middle of the boulevard on the neutral ground. Quite pertinent is the fact that Marshall Street and South Sewell Place are both boulevards, although the boulevard section of Marshall Street actually ceases prior to the block in which decedent lived. The boulevard status of these streets makes them appear quite similar.
On the evening of February 7, 1970, decedent left the family home in order to purchase hamburgers for supper. In proceeding homeward, she evidently turned down South Sewell Place instead of Marshall Street and drove in the anticipated direction of her home. Decedent evidently failed to observe the dead-end sign positioned on the neutral ground at the corner of Vine Street and South Sewell Place. She proceeded down the street and drove her automobile into the ditch, thereby sustaining injuries which resulted in her death approximately seven hours later.
*632 We have chosen to first consider the defendant's third specification of error in regard to the lower court's judgment having been made on the basis of a jury verdict that was contrary to the law and the evidence presented in the case. We believe that our evaluation of this alleged error affords insight and perspective into the other matters also alleged as error on the part of the lower court.
Plaintiffs contended from the outset that the defendant had failed in its duty of care to erect or place a warning sign or barricade at or in advance of the ditch into which the deceased's automobile was driven. Plaintiffs also asserted that the defendant was knowledgeable of prior automobile accidents at this same dead-end street in which automobiles had likewise been driven into this same ditch. It was also asserted that the street was not properly lighted at the point where the street met the ditch.
The defense asserted was founded upon allegations of negligence on the part of the decedent in failing to heed the dead-end sign aforementioned and upon a claim that no additional warning sign or signal was necessary at this location. It was the defendant's position that the dead-end sign positioned at the intersection prior to the ditch gave adequate warning.
Much examination in the lower court, by both counsel, sought to emphasize the position of the dead-end sign and its potential as a warning device. Much emphasis was placed upon the amount of illumination afforded the accident site and the dead-end sign by mercury vapor lights, which were present in this residential area. Considerable treatment was also given to the condition of that section of the road which extended southward from the termination of the paved section of South Sewell Place and continued up to the edge of the north bank of the ditch.
It is clear from the testimony produced at trial that there was an awareness on the part of city officials as to prior accidents having taken place at the same accident situs involved herein. Testimony was presented by Mayor Warren Constance which demonstrated knowledge on his part of one similar prior accident; testimony from B. J. Chenevert, the Bunkie City Engineer, demonstrated knowledge on his part of a similar prior accident, and John H. Daigrepont, a Bunkie policeman, testified as to knowledge on his part of two other prior accidents. It is well established in our jurisprudence that municipalities are obligated to maintain their streets and sidewalks in safe condition for the traveling public. Bangs v. City of New Orleans, Department of Streets, 196 So.2d 324 (La.App.4th Cir. 1967).
In the case of Mockosher v. City of Shreveport, 155 So.2d 438 (La.App.2nd Cir. 1963), the defendant city was deemed to have been notified of the dangerous condition of the sidewalk which prevailed when the officer who had observed the dangerous condition telephoned his headquarters and reported the condition. The testimony of B. J. Chenevert, City Engineer, who also lives in the immediate vicinity of the open ditch and whose duties were to superintend the care of the water system, sewer system, street system, and sanitation system of the Town of Bunkie, overwhelmingly corroborates a finding of notice of the dangerous condition which involved this street and ditch. Not only did he know first-hand of a prior accident which had transpired at this same location, but he was in the habit of communicating noteworthy city events to the Mayor of the Town of Bunkie. It is readily apparent from the testimony of the Mayor and from that of Mr. Chenevert that the ditch was considered to be dangerous in character. Therefore, it is clearly evident that the city was negligent in its failure to erect a suitable warning whereby the public could be alerted to the danger impending at the termination of the street.
We have held on a number of prior occasions that a motorist on a public street is *633 not required to anticipate that the street on which he is traveling will suddenly end in an unmarked and unbarricaded open ditch or body of water. Lejeune v. State Department of Highways, 215 So.2d 150 (La. App.3rd Cir. 1968); Hall v. State Department of Highways, 213 So.2d 169 (La. App.3rd Cir. 1968). In Falgout v. Falgout, 251 So.2d 424, 426 (La.App.1st Cir. 1971), the following was stated:
"A motorist is not required to anticipate that the road on which he is driving will suddenly terminate in a ditch, nor that any hidden dangers or obstructions exist ahead, in the absence of sufficient warning to the contrary." (Citations omitted.)
The only significant determination required at this point is in regard to which governing authority had jurisdiction over the particular street upon which the decedent drove to her death. It is clear from the record that South Sewell Place is within the corporate limits of the Town of Bunkie and that this accident happened within the same corporate limits. In regard to the assessment of liability for damages occasioned by failure to protect against the risk involved in this case, we find the statement of the applicable law given in Watts v. City of Baton Rouge, 248 So.2d 42, 44 (La.App.1st Cir. 1971), wherein it was stated:
". . . that the governing authority which has jurisdiction over the highway, road, street, or thoroughfare, has the legal duty to erect warning signs or barricades sufficient to warn motorists of any unusual obstruction, perilous condition or defect in the road face that would entail danger to the physical safety of those proceeding along such routes
From an application of the aforecited law to the facts presented in this case, we feel that the Town of Bunkie failed in its duty to provide adequate warning devices or barricades at the southern end of South Sewell Place.
Having found negligence on the part of the Town of Bunkie by reason of its failure to provide adequate warning to motorists, we now turn to a consideration of whether or not the facts support a finding of contributory negligence which would bar plaintiff from the relief afforded by the lower court. In reaching our opinion, we have relied upon the following facts established in the lower court. The speed limit on South Sewell Place was 25 miles per hour. Ulysses J. Henry and Marie A. Henry, residents of South Sewell Place, while not witnessing the accident itself, did momentarily observe the decedent's vehicle drive south on South Sewell Place in the direction of the accident site. The crux of their testimony revealed that the car did not slow up but drove at a constant speed which could not be classified as "excessively fast nor as traveling slow." In regard to the automobile's momentum, it was established by several witnesses that the resting position of the automobile was such that its front end was nearly straight down in the ditch while the rear end rested on the north side of the ditch bank. This gave support to the theory that the automobile was not traveling at a negligent rate of speed.
In regard to the decedent's having possibly exercised less than reasonable care, certain testimony was presented by defendant as to the condition of the road surface subsequent to the termination of the paved section of the street. Defendant sought to demonstrate that the decedent should have become aware of the end of the hard-surface street by reason of certain trenches which were cut at a right angle to the path of the street and which should have been apparent to decedent as the car was driven over them. Defendant offered testimony that the color of the street surface was white while that of the section subsequent to the end of the pavement was of a different color due to its being covered by a grassy surface.
Testimony to the contrary was presented by other witnesses who testified that the *634 surface of the portion which was not paved and which led up to the ditch was comprised of hard-mowed grass, and that this surface was smooth and straight with only a slight elevation. It is also noted that on cross-examination defendant's witness testified that the aforementioned trenches, though originally dug six inches deep and twelve inches wide in 1961 or 1962, had since become partially filled by the deposit of grass. In further support of plaintiffs' contention that decedent unknowingly drove straight off the nonpaved surface of the road was testimony of John A. Daigrepont, the policeman, who stated that no skid marks were observed to have existed.
From a review of the record, it has been determined that in reference to the deadend sign's placement and warning capability, the only witnesses who testified as to the sign's visibility were the Chief of the Bunkie Police and the City Engineer of the Town of Bunkie. Testimony of Ben Dauzat, of Sharkey L. Ryland, and of John Daigrepont revealed that the sign "could hardly be seen and that it was very inconspicuous." Testimony of Marie and Ulysses Henry, residents of this street, was ambiguous and noncommittal as to whether any of the trees obscured the sign. It is further noted that the Bunkie Police Chief's testimony regarding the position of the sign and its visibility, was based upon his daytime observation and not upon an evaluation of its visibility at dusk, which was the approximate time of the accident's occurrence.
We are of the opinion that the record fully reflects that the ditch was of such a nature as to constitute a hazardous obstacle and was so situated as to be non-apparent to oncoming motorists until too late. In view of the dangerous situation created at the abrupt termination of South Sewell Place, we do not believe that the positioning of a dead-end sign at the commencement of the last block of the street was sufficient to alert passing motorists. It is evident from the testimony adduced in the lower court that the warning capability of the dead-end sign in question was greatly if not completely reduced by an overgrowth of pine trees which obscured the sign from view.
It is also our conclusion that the decedent evidently thought herself to be traversing the street of her own residence, and was never apprised of the true situation until it was too late. The similarity between the two streets was such that the decedent evidently failed to realize her peril until it was too late. This is well supported by the evidence reflected in the record.
Further corroborative of the plaintiffs' position is that principle of law which has been followed in our jurisprudence that "where there are no eyewitnesses to any acts of negligence, it is presumed that a decedent acted with ordinary care for his own safety." Lejeune v. State Department of Highways, supra. From the foregoing facts, we have determined that the decedent's conduct was not such as involved an undue risk of harm to the decedent herself, nor did such conduct contribute as a legal cause to her damage, nor did the conduct fall below the standard of ordinary care to which she was required to conform for her own protection. Hidalgo v. Thomas, 229 So.2d 446, 447, 448 (La. App.3rd Cir. 1960). We, therefore, have determined that the defendant has failed to satisfy the burden of proving contributory negligence by a preponderance of the evidence on the part of the decedent. Hidalgo v. Thomas, supra.
Having considered the jury verdict to have been fully supported by the law and the evidence adduced, we now turn to the other specifications of error asserted by the Town of Bunkie. We first consider the appellant's contention that the lower court erred by failing to declare a mistrial because of plaintiffs' counsel's remarks made in regard to a barricade which was placed at the accident site subsequent to the accident. Reference to remedial repairs, *635 made subsequent to the occurrence of accidents, is generally excluded as inadmissible by reason of general public policy. We find that the statements made in this particular case were no more than harmless error. It is noted that although a certain opening statement was made by the plaintiffs' counsel in regard to the erection of a barricade at the accident site, a great deal of care was manifested by said counsel, throughout the trial of this case, in order that no specific testimony would be presented by witnesses as to the placement of barricades subsequent to the accident.
Although definite attention was given to the existence of barricades, it is clear from the record that the intention of plaintiffs' counsel was to demonstrate that no warning barricades existed at the accident site prior to this fatal accident. We note that the testimony was volunteered by defendant's own witness as to the existence of barricades subsequent to the accident in question. The record also reflects that the lower court instructed the jury during the course of the trial not to consider any repairs made to the accident site subsequent to the occurrence of the accident. Likewise, in its charge to the jury, the lower court specifically instructed the jury to discount any such repairs made.
By reason of these instructions, we feel that the defendant has not been prejudiced by the mention of any such barricades. Begnaud v. Texas and New Orleans Railroad Company, 136 So.2d 123 (La.App.3rd Cir. 1961). Our opinion in this matter is well bolstered by the following excerpt from the case of Luquette v. Bouillion, 184 So.2d 766 (La.App.3rd Cir. 1966):
". . . counsel have great latitude in argument before a jury, subject however to regulation and control by the court whose duty it is to confine argument within proper bounds, 88 C.J.S. Trial § 169; and upon appeal, unless the contrary is clearly shown, rulings of the trial court with regard to allegedly prejudicially improper argument and conduct of counsel are presumed to have been within its discretion in the matter, 5 C. J.S. Appeal and Error § 1554, at 1129-1130. By these standards, the appellants have not shown that the trial court erred in refusing to set aside the jury verdict and to grant a new trial because of alleged improprieties in the plaintiffs' opening or rebuttal arguments."
The final assertion of error on the part of the lower court is in regard to the lower court's failure to grant defendant's motion for a new trial based on the ground that a jury trial is not authorized against a public body. LSA-R.S. 13:5104. A review of the record has revealed that at no time prior to this appeal has defendant's counsel ever evidenced any opposition to the trial of this matter to a jury.
There was no objection made to a jury trial during the course of the trial of this matter, nor did the defendant allege any such objection as one of its grounds for a new trial. However, LSA-R.S. 13:5104 has been asserted on appeal as grounds for error on the part of the lower court. LSA-R.S. 13:5104 states:
"No suit against the state or other public body shall be tried by jury."
The cases cited by defendant in support of its position are found inapposite to the case at hand. These cases do not concern themselves with a jury trial against a public body.
Our research has not revealed any jurisprudence wherein a jury trial was first consented to by a public body and subsequently made a ground for reversal of the judgment rendered in the case. In the case of Jobe v. Hodge, 253 La. 483, 218 So.2d 566, 568 (1969), our Supreme Court aptly stated the following general law in regard to trial by jury in civil cases:
"Louisiana recognizes the right to trial by jury in civil cases, except as limited by Article 1733 of the Code of Civil Procedure. See La.Const. art. 7 § 41 (1921), La.Code Civ.P. art. 1731. Insofar as it is pertinent here, Article 1733 *636 declares that a trial by jury shall not be available in `cases where a jury trial is specifically denied by law.' And Title 13, Section 5104 of the Revised Statutes provides that `No suit against the state or other public body shall be tried by jury.' These enactments therefore, are authority for the proposition that a jury trial may not be had against the Village of Tallulah, which is a public body within the contemplation of Section 5104 of Title 13 of the Revised Statutes."
We note that Jobe v. Hodge, supra, was concerned with the Village of Tallulah's objection to trial by jury prior to the actual trial of the matter.
In the same case, Jobe v. Hodge, supra, but at the appellate level, 207 So.2d 912, 914 (La.App.2nd Cir. 1968), the following was stated:
"It is contended on behalf of appellants that the motion to strike is improper and appellees' remedy was by other means. We disagree with the arguments so presented. The function of the motion to strike is provided for in C.C.P. Art. 964 and states:
'The court on motion of a party or on its own motion may at any time and after a hearing order stricken from any pleading any insufficient demand * * *.'
The demand for a jury trial is expressly prohibited with respect to the Village of Tallulah. It is therefore insufficient for the demand is not permissible in law. It was urged by appellants that defendants have waived the right to object to a trial by jury as it was filed too late after answer was filed. The record does not support counsel in the contention that the motions were filed subsequent to the answer and, according to the provisions of C.C.P. Art. 964, the motion may be filed at any time."
It can be seen from the foregoing that the suitable remedy to preclude a jury trial against a public body is the "motion to strike" as provided by C.C.P. Art. 964. It is obvious from the above that our brothers in the Second Circuit considered the possibility of a waiver of the public body's right to object to a trial by jury, and we accordingly feel that to be a valid consideration.
From its failure to object to a trial by jury of the issues involved in this case, we find that the defendant, Town of Bunkie, has waived its right to object to such a jury trial under the authority of LSA-R.S. 13:5104. Though the defendant public body is not required to submit to a jury trial, it can in its own discretion proceed in accordance with a trial by jury and thereby waive its statutory protection. It could not have been the intention of the redactors of this article that this article would be utilized as a means to escape liability once it had been validly determined and assessed by a jury consented to by all parties. If this article were construed as an all encompassing prohibition against jury trials even after the manifestation of consent thereto by the state or other public body, then we would in effect allow an extreme injustice in the administration of our civil law. To construe this article in such a fashion would be to allow the state or other public body to have "two bites at the apple."
The defendant state or other public body could sit back and safely submit to a trial by jury, knowing beforehand that if a judgment were rendered adversely to their position that an ultimate appeal based upon LSA-R.S. 13:5104 would afford them relief. This we will not countenance. Further supportive of our position on this matter is the case of Driefus v. Levy, 140 So. 259, 262 (La.App.2nd Cir. 1932), wherein it was stated:
"However, as we have said previously, we are vested with authority to pass on the facts upon which the jury acted and to render such judgment as the evidence warrants."
*637 This is further substantiated by the case of Collier v. Ami, Inc., 254 So.2d 170, 171 (La.App.2nd Cir. 1971):
"Appellant [appellate] courts of this State are charged with the responsibility of determining, from the record, irrespective of what the jury may have found, what facts have and have not been established." Henson v. Travelers Insurance Company, 228 So.2d 667 (La. App.1st Cir. 1969); Johnston v. Bearden, 127 So.2d 319, 326-327 (La.App. 2nd Cir. 1961cert, denied)."
We have found from a review of the record that the jury verdict is fully supported by the facts, and we are accordingly unable to find that manifest error has been committed by the lower court.
For the above and foregoing reasons, the judgment as rendered by the lower court is affirmed in whole. Appellant, Town of Bunkie, is to pay all costs.
Affirmed.