315 So.2d 883 (1975)
Lesley Wayne SIMMONS et al., Plaintiffs-Appellees,
v.
BEAUREGARD PARISH SCHOOL BOARD et al., Defendants-Appellants.
No. 4465.
Court of Appeal of Louisiana, Third Circuit.
July 3, 1975.
Rehearing Denied July 24, 1975.
Writ Refused October 13, 1975.
*884 William C. Pegues, III, DeRidder, for defendant-appellant-appellee.
C. A. Miller, Jr., and Russell T. Tritico, Lake Charles, for plaintiffs-appellees-appellants.
Hall & Coltharp by L. H. Coltharp, Jr., Mitchel M. Evans, DeRidder, for defendant-appellee.
Before FRUGE, MILLER and DOMENGEAUX, JJ.
DOMENGEAUX, Judge.
Defendant Beauregard Parish School Board appeals the jury verdict awarding *885 damages to Olwayne O. Simmons, individually and as administrator of his minor son Lesley Wayne Simmons, for Lesley's injuries resulting from an accident which occurred on the school grounds. We affirm.
Additional defendants in the original litigation were the principal of the Eastside Upper Elementary School of DeRidder, B. D. Crain; the assistant principal, Vincent Garofolo; science teachers, James A. Welborn and Jefferson D. Bryant; and the liability insurer of Crain and Welborn, Horace Mann Mutual Insurance Company, which had policy limits of $100,000.00.
The jury found negligence on the part of the School Board, Crain, Garofolo, and Bryant. Welborn was held free from negligence. In accordance with the verdict, judgment was rendered against Crain, Garofolo, the School Board, and Horace Mann Mutual Insurance Company. Bryant had not been served with process, so he was not cast in judgment. All parties cast in judgment applied for a new trial, which was granted by the trial judge to all but the School Board. Plaintiffs appealed the order granting a new trial. That appeal was dismissed by this court on finding no final judgment against those parties. Simmons v. Beauregard Parish School Board, 284 So.2d 668 (La.App. 3rd Cir. 1973).
The School Board then appealed on the merits. To avoid piecemeal appeals, this court held the judgment in abeyance until final judgments were rendered as to all parties and remanded the case. Simmons v. Beauregard Parish School Board, 293 So.2d 226 (La.App. 3rd Cir. 1974). Plaintiff-appellee also answered the appeal seeking judgment against Ernest Evans,[1] a teached on school "bus-duty" the afternoon of the accident.
In December, 1974, the trial court granted plaintiffs' motion to discontinue, without prejudice, their claim against Crain, Garofolo, and Horace Mann Mutual Insurance Company, reserving their rights in the original judgment as to the School Board. From this order, the School Board appealed alleging the order violated this court's judgment.
Plaintiffs then filed a motion in this court seeking to dismiss, with prejudice, their claims against defendants Crain, Garofolo, and Horace Mann Mutual Insurance Company, but reserving their rights in the original judgment against the School Board.
The School Board has not third partied these additional defendants. We therefore grant plaintiffs' motion to dismiss with prejudice, their suit against Crain, Garofolo, and Horace Mann Mutual Insurance Company, reserving to plaintiffs their rights in the original judgment as against the Beauregard Parish School Board.
Since we now have final judgments as to all parties, the reason for holding the judgment in abeyance has now been cured. We now consider the merits of the appeal.
The first specification of error raised by the School Board relates to the trial judge's refusal to grant it a new trial on the ground that LSA-R.S. 13:5104 prohibits a jury trial against a public body. The School Board did not object to the jury trial of the case until the jury rendered an adverse verdict. The School Board failed to invoke the prohibition of LSA-R.S. 13:5104. In failing to object, the School Board waived its right to assert the prohibition. Callahan v. Town of Bunkie, 287 So.2d 629 (La.App. 3rd Cir. 1973). The proper remedy for a public body is the utilization of a motion to strike, as provided by LSA-C.C.P. art. 964, prior to trial by jury. Callahan v. Town of Bunkie, supra.
The remaining specifications of error deal with the jury's verdict and the questions of quantum. Accordingly, we review the facts giving rise to this litigation.
*886 The accident sued upon herein occurred on March 16, 1971. At the time plaintiff's 13-year old child, Lesley Wayne Simmons, was enrolled in Eastside Upper Elementary School in DeRidder, Louisiana, as a 6th grade student.
Prior to the accident the school had scheduled a School Display Day to be held some time in March, 1971. The students in the various courses of study were asked to prepare projects relevant to what they were being taught at the time. On or before the designated day the students would bring their project to school, which parents could then come and observe. Although the display day was designed for all courses taught, it appears that only the science classes participated.
During the major portion of the school year 1970-71 James Welborn was Lesley Simmons' science teacher. Around March 1st Welborn and the other science teacher, Jefferson Bryant, switched classes in order that the students could be exposed to different areas of teaching under separate instructors. Lesley thus became a student of Mr. Bryant's during the one period in which science was taught. One of the courses of study covered by Mr. Bryant toward the end of the school year involved "earth surfaces".
Lesley decided to participate in the School Display Day and chose as his project a simulated volcano. He sought the assistance of his father and older brother, the latter having previously presented a similar project.
The volcano was constructed at Lesley's home by molding a mixture of clay and mud around a large bottle. A small metal can, which was attached to a wire at the top of the volcano, was lowered into the mouth of the jar to the bottom and served as a container to receive powder which was to be ignited, thereby creating an eruptive effect. The powder for the project was obtained by Lesley's father purchasing firecrackers. The firecrackers were in turn taken apart and the powder removed and placed in a small medicine bottle covered with a plastic cap.
Shortly thereafter Lesley brought the exhibit to school and placed it in a closet next to Mr. Bryant's classroom. There were several volcano projects which were to be demonstrated at the day set aside for display. Apparently one or some of these projects were exhibited and demonstrated on School Display Day. In addition, a few days before or after, Mr. Welborn's class was brought to see the projects prepared by Mr. Bryant's students. At this time, a volcano was demonstrated. There is a dispute as to whether it was Lesley's volcano, or that of another student, and whether Lesley or Mr. Bryant performed the demonstration.
On March 16th Lesley picked up his volcano, as instructed, in order to bring his project home. Mr. Bryant allowed Lesley to take his whole project with him, including a medicine bottle.[2] While waiting for the school bus, Lesley was apparently encouraged by other students to demonstrate his volcano. Lesley in turn gave one or two demonstrations and while pouring powder for the second or third demonstration, an explosion occurred and Lesley was seriously injured. A spark apparently entered the small bottle containing the remainder of the powder, causing the *887 explosion. At the time of the accident the children were under the supervision of the school "bus-duty" teachers who had been assigned the task. One of these teachers near the scene of the accident when it occurred was Mr. Ernest Evans.
This brings us to a consideration of the allegation that the jury erred in finding actionable negligence on the part of the School Board via the doctrine of respondeat superior. After review of the record we find the jury had ample evidence upon which to base its verdict in this particular.[3]
Mr. B. D. Crain, the principal of Eastside Upper Elementary School, testified that the School Display Day was an activity suggested by the teachers and approved by him for the students to make and display projects relating to school work. Each teacher was given responsibility for the area of education they taught. No regulations or standards were imposed upon the teachers by the principal of the school and no overall supervision of the school display was vested in anyone. It is significant to note that Crain did not require any reports on the type of projects to be made by the students nor did he set any guidelines, but stated in effect that he relied on teachers' overall mature judgment and responsibility. "Crain did however testify that there clearly existed rules and regulations (whether or not written) regarding the prohibition against the use or possession of matches, firecrackers, or any type of explosives. He further indicated that teachers understood that students were not to use volatile materials or explosives and that no one contacted him to discuss or get permission to use an explosive and matches in such an experiment, the latter being against the rules because of its danger to the students. He also stated that a chemical compound, rather than powder, should have been used for the project.
Mr. Welborn testified to the effect that he did not allow the use of explosives or volatile substances in any experiment in his classes and that he assumed the volcano demonstration given to his class was accomplished with the use of a chemical compound, rather than powder. He further indicated that Lesley was known to be unruly and that as a teacher he would not have let him experiment with a volatile substance.
Lesley's science teacher, Mr. Bryant, testified essentially that he made no suggestions for the projects, laid out no guidelines, made no approval of projects, required no explanations of the projects by the students to him, and never discussed or supervised any of the projects. He indicated that it was his belief that a 13-year old had a concept of what was dangerous and what was not, and that a child of that age would not do anything dangerous to himself. He stated further, that in demonstrating the project he used firecracker stems, did not know that Lesley had firecracker powder, saw no potential danger in the project, and did not warn Lesley in any way on the day he was allowed to remove the project from the classroom. Finally, Mr. Bryant concluded that his responsibility ended at the classroom.
Under the foregoing facts there was ample evidence for the jury to conclude that Mr. Bryant was negligent in allowing Lesley, a 13-year old student, to build and demonstrate a project without even determining exactly what substances were used or whether the project was dangerous to the student himself or others. The lack of supervision on the part of this School Board employee was negligence, resulting in serious injury to the child.
The School Board next raises the issues of contributory negligence on the part of Lesley and his father, in addition to assumption of risk.
*888 The jury found Lesley free from contributory negligence and that he had not assumed the risk. Lesley's father was also found free from contributory negligence.
The existence of contributory negligence or assumption of risk is a question of fact to be decided by the trier of fact, in this case, the jury. Odom v. Hooper, 273 So.2d 510 (La.1973); Langlois v. Allied Chemical Corp., 258 La. 1067, 249 So.2d 133 (1971); Dewese v. Hartford Accident & Indemnity Co., 295 So.2d 574 (La.App.3rd Cir. 1974); Cooksey v. Central Louisiana Electric Co., Inc., 279 So.2d 242 (La.App.3rd Cir. 1973). We find no manifest error in the foregoing conclusions reached by the jury.
On the question of the father's alleged contributory negligence, we note the following: Mr. Simmons testified that Lesley informed him that the volcano project had been approved by his science teacher. Accordingly, Mr. Simmons obtained the firecrackers and oversaw their "hulling" in order to extract the powder therefrom. He further indicated that because of fear of combustion he did not let Lesley use the firecracker fuses in the demonstration or allow his son to place them in the jar with the powder. In addition, as corroborated by Lesley's older brother, Mr. Simmons instructed and warned Lesley on the careful use of the project and in fact supervised several home demonstrations. He concluded essentially that with the proper supervision he had no misgivings about the project. Apparently as an extra precaution, Mr. Simmons did not furnish his son with matches to take to school with the project.
We conclude the jury had sufficient evidence to find that Mr. Simmons was not negligent in the manner in which he instructed his child in the use of the project. It is evident that the jury believed Lesley's testimony (as well as his father's) to the effect that the project had been approved by the science teacher and that Mr. Simmons apparently assumed that the child would be adequately supervised at school, just as he was at his own home.
The next issue raised is whether Lesley was contributorily negligent and/or assumed the risk involved.
A 13-year old boy is certainly capable of contributory negligence, depending upon circumstances of each case. The application of the doctrine, however, is not a mechanical rule which can be applied to determine the capability of a child to observe and avoid danger. A child is not held to the same degree of care as an adult. Rather, the test is whether the particular child, considering his age, background, and inherent intelligence, indulged in the gross disregard of his own safety in face of known, understood, and perceived danger. Plauche v. Consolidated Companies, Inc., 235 La. 692, 105 So.2d 269 (1958); Murray v. Volkswagen Mid-American, Inc., 297 So.2d 236 (La.App.3rd Cir. 1974); Dupuy v. Pierce, 285 So.2d 321 (La.App.3rd Cir. 1973); Faia v. Landry, 249 So.2d 317 (La.App.4th Cir. 1971); Savoy v. State ex rel. Louisiana Highway Dept., 244 So.2d 93 (La.App. 3rd Cir. 1971); Patterson v. Recreation and Park Commission for Parish of East Baton Rouge, 226 So.2d 211 (La.App.1st Cir. 1969); Cormier v. Sinegal, 180 So.2d 567 (La.App.3rd Cir. 1965); Sepulvado v. General Fire & Casualty Co., 146 So.2d 428 (La.App.3rd Cir. 1962).
Similar principles are applied insofar as the doctrine of assumption of risk is concerned. Laney v. Stubbs, 217 So.2d 468 (La.App.1st Cir. 1968). A defense of assumption of risk is however narrowly confined and restricted by requirements that a party must have full knowledge and appreciation of the danger, yet voluntarily expose himself to the risks and embrace the known danger. Langlois v. Allied Chemical Corp., supra; Pollard v. Roberts, 306 So.2d 801 (La.App.2nd Cir. 1975).
In regard to plaintiff's inherent intelligence, etc. the record bears out that Lesley *889 was lower than average scholastically and basically a problem child. On the question of whether he knew, understood, and perceived the danger involved, we note that the project (or a similar one) had been approved and demonstrated by his teacher on one occasion and at least once by Lesley. He was allowed to remove his project from the classroom, without instructions or supervision.
The jury apparently concluded Lesley did not fully realize and appreciate the risk involved. In addition, in holding he had not assumed the risk, the jury also evidently concluded he did not intentionally and voluntarily expose himself to obvious danger, within his capacity to understand. Under the evidence presented we cannot say that they manifestly erred in these factual determinations.
The defendant School Board also contends plaintiff was contributorily negligent by reason of the fact that he violated a rule of the school prohibiting crossing the street to buy items from a local store. It is argued that he violated the rule the afternoon of the accident and purchased the matches used for the schoolground demonstration, without which the accident would not have occurred.
Assuming arguendo, that Lesley did obtain the matches by crossing the street,[4] we opine the harm suffered by Lesley was simply not of the kind which the school rule was intended to prevent. Therefore, violation of the rule was not contributory negligence. Dixie Drive It Yourself System, New Orleans Co., Inc. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962). See also Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972); Sevin v. Diamond M Drilling Co., 261 So.2d 375 (La.App.1st Cir. 1972).
The last issue raised by the appellant School Board is that of quantum. The jury awarded $104,000.00 as general damages for the injuries suffered by Lesley, and $1,104.85 as special damages to the father for medical bills incurred. Special damages were amply proved by the introduction of the bill from Louisiana Charity Hospital, together with the doctors' statements who administered emergency treatment to Lesley.
At the outset, we observe that the jury is vested with "much discretion" in awarding general damages for injuries. La.C.C. Art. 1934; Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967); Miller v. Thomas, 258 La. 285, 246 So.2d 16 (1971).
The main injury which Lesley received was to his right hand, his dominant member. This injury was described as an extensive laceration of the palm of the hand, the third and fourth fingers hanging by a skin, the fifth finger almost completely destroyed, and the distal phalanx of the index finger destroyed. Corrective surgery has amputated the third, fourth, and fifth fingers of his right hand, and the distral phalanx of the index finger. The third and fourth metacarpal bones of the hand were removed. The metacarpal bones are those which give strength to the grip of the hand. The hand has undergone considerable reconstructive plastic surgery, including skin grafts to cover the denuded part of the thumb and finger which remain.
*890 In addition numerous lacerations about the chest, abdomen, thighs, and head, involving the skin and fatty area under the skin, which resulted from the fragmentation of the glass bottle which Lesley held in his hand, have left him scarred for life.
Medical testimony indicates that Lesley's ability to earn a living is limited to occupations which do not require manual labor. Lesley testified that he was no longer able to participate in the former hobbies and sports he enjoyed, namely, he was unable to play football, baseball, basketball. He has difficulty reeling in a fishing pole or pulling a trigger on a shotgun. Mr. Simmons further revealed that his son no longer liked to participate in sports and that he constantly acted discouraged with himself.
Medical evidence indicates that the type of injury which was sustained by this youth was severe and very painful. Additionally, the child will be physically deformed for the rest of his life. The award of the jury can not be termed excessive under these circumstances.
As aforementioned, plaintiff-appellee herein also answered the appeal contending that Ernest Evans was negligent in failing to properly supervise Lesley while on "bus-duty" the afternoon of the accident. Ernest Evans, however, was never made a party to this suit and as a result we can make no determination regarding his alleged liability.
For the reasons assigned, the judgment of the trial court is hereby affirmed. All costs of this appeal are to be paid by the defendant School Board.
Affirmed.
MILLER, J., dissents and assigns written reasons.
MILLER, Judge (dissenting).
In the main, the jury determination was reversed when 1) the trial court granted a new trial to Crain, Garofolo, and Horace Mann Mutual Insurance Company, and 2) plaintiffs dismissed their claim against these defendants with prejudice. The jury tailored its verdict to cast the insurance company for its $100,000 coverage, and that holding has been reversed. It is respectfully submitted that plaintiffs' contributory negligence and/or assumption of risk requires a reversal of the entire judgment.
In order to get the matches Lesley used to cause this accident, Lesley knowingly violated school rules. Lesley testified that he knew it was against the rules to cross the street to go to the store; that he knew it was against school rules to have matches on the school grounds. Tr. 746. Lesley's was the only testimony indicating that he didn't cross the street to get matches. He saw fit to call only one of his friends who witnessed the accident, Raymond Phantz. Raymond was adamant that Lesley could not get matches on the school ground these were refused by Mr. Evans, a teacher; that Lesley went to the store across the street; and that when Lesley came back he had the matches. Tr. 693,4. This testimony by a disinterested witness for whom plaintiff vouches, destroys Lesley's denial. But defendants went further. They called the remainder of the witnesses to the accidentand all (except one not in position to know) verified that Lesley violated the rules by going to the store. There was no reasonable basis for concluding that Lesley did not knowingly violate school rules, and this violation was a direct cause of plaintiff's injuries.
If additional support is needed, I agree that we must consider whether Lesley indulged in a gross disregard of his own safety in face of known, understood, and perceived danger, and whether he intentionally exposed himself to obvious danger within his capacity to understand. It is respectfully submitted this record establishes beyond doubt that he did.
Relevant here is Lesley's age, background, and inherent intelligence. He was *891 below average scholastically, but his father explained this was in part due to the fact that Lesley's mother sometimes didn't get him up in time to go to school. Tr. 653. The only grade Lesley failed was the third grade. At trial Lesley was in the eighth grade and except for failure in the third grade, he had done satisfactory work. Lesley was characterized as not a bad boy, but mischievous on occasion. Lesley's father concluded that Lesley made about average grades. He was satisfied that Lesley was old enough and understood how to demonstrate the volcano exhibit. Tr. 664,5.
Lesley's father and older brother warned him to be careful with the explosive powder and to throw the match into the volcano rather than get close to the powder while holding the match.
Examples of their warnings appear in their testimony which the jury failed to consider. Lesley's father testified at Tr. 647 that he told Lesley he wouldn't let him have the firecrackers "unless they sit there in the floor and they tore them apart right there and get all the powder out of them, because I didn't want them to put them in no can or bottle or anything for combustion." At Tr. 658, Lesley's father answered in the affirmative to the question "Did you, to the best of your ability, see that it (the firecracker powder & exhibit) was constructed right and used right?" At Tr. 663, Lesley's father testified that ". . . if (firecracker fuses) happen to be in the bottle, or in the fire or anything get to it, then it would cause a combustion sure enough. Q. Did you talk to Lesley about these things, tell him, for instance, why youA. Yes sir, I explained it to him. Q. After this powder was taken from the firecrackers and the volcano was completed, it was tried out several times there at home, wasn't it? A. Yes sir. Q. Did you help them and advise them on how to do this? I believe you answered earlier something about a piece of paper leaning over the side so they could light it and keep their hands out of the way? Is that something like you said? A. Yes sir. Q. Why did you want them to do that? A. Well, I wanted to make sure that I was there and they conducted that thing to where itto see if it was safe and so on and so forth. I didn't want no mishap to some from that thing. Q. Well, would you say that you were very careful in explaining to him and the older boy as to how he should be done? A. Yes sir. Q. Did they understand what you were talking about, what you were telling them? A. I believe they did, yes sir."
At Tr. 664, Lesley's father testified that he thought Lesley was old enough to handle the project and to use it and he wouldn't have let Lesley take it to school if he had not thought that. He also answered in the affirmative to the question at Tr. 664: "Q. Now did you explain to him about the fact that you couldn't bind that powder or compound it and let a spark get in it, that it might go off if that happened?" At Tr. 665, Lesley's father testified that he explained to Lesley that if a spark gets to the powder, it could explode.
At Tr. 714, Lesley's older brother testified that his father told Lesley to be careful when lighting the powder; that he made a point of showing Lesley carefully what he should do. At Tr. 715, the older brother told Lesley to be careful with the project at school and not to let anyone else do it except the teacher. At Tr. 723, Lesley's older brother was on redirect examination by Lesley's counsel and testified: "Q. Did you have any conversation with Lesley concerning the use of the firecracker powder? A. Yes. Q. What was it? A. Well, I told him you know, to be careful and all with it, you know, and if anybody else wanted to do it just to tell them `No'. Q. Now beside that instruction, what else did you tell him about the the use of the powder and the experiment? A. I told him you know, just to use a little bit, not to use too much, you know, because if he used too muchwell, I don't *892 know what it would do, so I told him just use a little bit."
Lesley testified at Tr. 737-8 that he remembered that his father told him most of the things his father testified to. He testified that he'd "throw a match in there. . . (my brother) told me to put a little bit of firecracker powder in there, just enough to cover the bottom of the can, and then put that match in there and pull your hand away real fast." Lesley testified at Tr. 742 that Mr. Bryant was not there when he went to get his volcano. At Tr. 746, Lesley answered to these questions posed by his counsel: "Q. Was it against the rules to go to the store? A. Yes sir. Q. Do you know if it was against the rules to have matches on the school grounds? A. Yes sir."
It is respectfully submitted that the record is subject to only one finding: that Lesley grossly disregarded his own safety in face of known, understood, and perceived danger, and exposed himself to obvious danger within his capacity to understand.
Lesley's father's contributory negligence was established. He knew that firecracker powder was an explosive. Tr. 663. Explosives are inherently dangerous. Lesley's father had the duty not to place inherently dangerous substances in the hands of his thirteen year old son without providing adequate supervision or at least ascertaining whether his son appreciated the dangers involved. Jones v. Robbins, 289 So.2d 104 (La.1974); Station v. Travelers Insurance Company, 292 So.2d 289 (La.App. 1 Cir. 1974).
Lesley's father allowed his son to perform the experiment. He purchased the firecrackers from which the powder was taken. He approved his son's action in taking the volcano to school. He could reasonably anticipate that Lesley would attempt to demonstrate his experiment in accordance with the practice established by his father. The accident was foreseeable. There is a causal connection between the breach of this duty and the harm suffered by Lesley.
The fact that Bryant's negligence may have been an intervening cause of the accident does not absolve the father. A foreseeable intervening act is not a superseding cause and does not relieve the original wrongdoer from liability. Jackson v. Jones, 224 La. 403, 69 So.2d 729 (1953); Station v. Travelers Insurance Company, 292 So.2d 289 (La.App. 1 Cir. 1974). See also 57 Am.Jur.2d, Negligence § 200, p. 572.
It is respectfully submitted that Lesley's father is barred from recovering his individual claim for medical expenses. Romero v. General Accident Fire and Life Assurance Co., 199 So.2d 607 (La.App. 3 Cir. 1967); Thibodeaux v. Jack's Cookie Corporation, 169 So.2d 918 (La.App. 3 Cir. 1964).
Lesley's father permitted Lesley to take the exhibit to school after careful consideration of the dangers and with the firm belief that Lesley was competent to handle those dangers. This accident occurred after the teachers restored Lesley to the identical status in which he had been placed by his fathertransporting the exhibit between home and school. The jury applied a double standard in finding a method to cast the insurance company for Lesley's serious and unfortunate injuries. One standard for the parent and child, and another for the school. The jury did not intend to cast the people of Beauregard Parish to pay this judgment. This result flows from plaintiffs' dismissal of their claim against three defendants.
Compensating Lesley and his father for injuries caused by their own fault has undesirable consequences. The school children of Beauregard Parish are deprived of this substantial sum needed for their education. The record suggests that members of a teachers organization have liability insurance coverage of $100,000 for a premium *893 of 40¢ per year. Such exposure as that here recognized will require a substantial raise in premium rates. When this comes, teachers have no way to pass on the increase.
This case turns primarily on a factual dispute. The rule requiring great weight to be given the jury's factual findings (Canter v. Koehring Company, 283 So.2d 716 (La.1973) is not so persuasive here. The parties overturned a substantial part of the jury's verdict when they dismissed their suit against three defendants with prejudice. It is respectfully submitted that this record will not support their finding that plaintiffs were free from contributory negligence and/or did not assume the risk.
I respectfully dissent.
NOTES
[1] Evans was never made a party to this suit.
[2] A factual dispute exists as to the contents of the bottle which Lesley originally brought to the school and the one which he took from the classroom on the day of the accident. As mentioned later in the opinion testimony by Mr. Simmons indicates only firecracker powder, and not the fuses, were initially placed in the medicine bottle. This is further corroborated by testimony of Horace Simmons, Lesley's brother. Mr. Bryant testified that he demonstrated a volcano by using firecracker fuses. Lesley himself indicated the bottle he used in the demonstration resulting in his injuries was not the one he brought to school originally. One student at the scene of the accident testified that the bottle used in the demonstration contained firecracker fuses.
[3] In discussing this issue we will express no opinion regarding the alleged negligence of the defendants which were granted a new trial or dismissed by plaintiffs.
[4] There is a dispute as to how Lesley obtained the matches needed to demonstrate his volcano. One student indicated Lesley asked Mr. Evans for matches, which the teacher allegedly refused, and that Lesley crossed the street to buy a kite and could have obtained the matches in this manner. Mr. Evans denied ever being asked for matches. Two other students opined Lesley crossed the street to get the matches. One, however, indicated another student might also have had matches. Lesley denied crossing the street and testified that the matches were in the box with his project on the afternoon he picked up same.