LEBLANC, Judge.
This appeal arises out of a personal injury suit by plaintiff, Shirley Brinson (Brinson), against defendant, the Morgan City Housing Authority.[1] The Housing Authority appeals the trial court judgment, pursuant to a jury verdict, in favor of plaintiff.
FACTS
In late December, 1989, most of south Louisiana, including the Morgan City area, was hit with unusual, sub-freezing temperatures, snow, and ice. On Saturday, December 23, 1989, Brinson, a resident of Shannon Homes, one of five sites owned and operated by the Housing Authority, began to hear running water and observe moisture accumulating on the walls of her living room. Upon inspection, she found water dripping down the walls in the kitchen and collecting on the floor. She tried to mop up the water and used pots and pans to collect the falling-water. She also attempted to telephone the Housing Authority, first by calling the weekend number and then the emergency number. Neither number was answered.
Brinson then called Ms. Mittie Byrd, a friend and one of the members of the five-member board which establishes policies and *1216 procedures for the Housing Authority. Ms. Byrd also attempted to reach the Housing Authority at both numbers, but could not get a response.[2] Brinson continued to mop up and collect the dripping water, which began to flow more rapidly.
After approximately four hours, a portion of the sheetrock ceiling in the kitchen of Brinson’s apartment collapsed, striking her on the head and knocking her into the refrigerator.
On August 6, 1990, Brinson filed the instant suit for damages against the Housing Authority. In her petition, Brinson alleged that the ceiling and water pipes in her apartment were faulty and/or defective and were the cause of her injuries.
After a trial by jury, the defendant was found at fault and the jury allocated the fault between the parties at eighty-seven percent (87%) against the Housing Authority and thirteen percent (13%) against Brinson. The jury further awarded Brinson the following damages:
(a) Past and Future Medical Expenses: $38,700.00
(b) Loss of Earning Capacity: $25,000.00
(c) Past and Future Physical and Mental Injury, Pain and Suffering, Disability and Loss of Enjoyment of Life: $31,600.00
These amounts were reduced by Brinson’s percentage of fault, and judgment was rendered for Brinson in the amount of $82,-911.00.
The Housing Authority filed a motion for judgment notwithstanding the verdict, and alternatively, a motion for new trial, which were denied. From this adverse judgment, the Housing Authority appeals, assigning as error:
1. Whether Brinson proved by a preponderance of the evidence that the Housing Authority was liable under strict liability and/or negligence for plaintiffs injuries.
2. Whether Brinson’s actions were a substantial cause of and/or contributed to the injuries she sustained.
3. Whether the affirmative defense of “Act of God” or “Force Majeure” is applicable to the facts of this case.
4. Whether the damages awarded by the jury were excessive.
5. Whether the jury verdict should be set aside based on the statutory prohibition against trial by jury in suits against the state.
ASSIGNMENT OF ERROR NOS. 1, 2, AND 3
At trial the plaintiff argued[3] two theories of liability: strict liability of a landlord under La.C.C. art. 2695[4] and negligence under La. C.C. art. 2315.[5]
Under either a strict liability or general negligence theory, the plaintiff has the *1217 burden of proving: (1) the property which caused the damage was in the “custody” of the defendant; (2) the property was defective because it had a condition that created an unreasonable risk of harm to persons on the premises (breach of the duty); and (3) that the defect in the property was a cause in fact of the resulting injury. See, Farr v. Montgomery Ward and Co., Inc., 430 So.2d 1141, 1143 (La.App. 1st Cir.), writ denied, 435 So.2d 429 (1983).
Generally, a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong”. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). In Stobart v. State Through DOTD, 617 So.2d 880, 883 (La.1993), the Supreme Court reiterated the standard of review, stating, “where two permissible views of the evidence exist, the fact-finder’s choice between them cannot be manifestly erroneous or clearly wrong.”
We find, after a careful reading of the record before us, that there is a reasonable factual basis for the finding of negligence on the part of the Housing Authority. There was testimony that the Housing Authority knew of the forecast of extremely cold temperatures, that the Housing Authority met to discuss plans for dealing with the cold yet failed to agree on a course of action, and that residents of the apartments of Shannon Homes did not, without the aid of a special tool unavailable to them, have access to the shut-off value to turn their water off.
In addition, Brinson was unaware that there were water pipes in the ceiling of her apartment. During the years Brinson had resided in the Housing Authority apartments, her pipes had never frozen. At no time prior to this incident nor during this episode of cold weather did the Housing Authority advise Brinson that there were pipes in the ceiling or that she should take precautions against the pipes freezing and then bursting. We find no error in the jury’s determination of fault on the part of the Housing Authority.
The defense of “force majeure” does not shield the defendant from liability. In Rector v. Hartford Acc. & Indem. Co. of Hartford, Conn., 120 So.2d 511, 515 (La.App. 1st Cir.1960), an “act of God” was defined as follows:
An Act of God is an unusual, extraordinary, sudden, and unexpected, manifestation of the forces of nature which man cannot resist. The fact that no human agency can resist an Act of God renders misfortune occasioned solely thereby a loss by inevitable accident which must be borne by the one upon whom it falls. On the other hand, when an Act of God combines or concurs with the negligence of the defendant to produce an injury, the defendant is liable if the injury would not have resulted but for his own negligent conduct of omission.
No one is liable for an injury proximately caused by an Act of God, which is an injury due directly and exclusively to natural causes, without human intervention, which could not have been prevented by the exercise of reasonable care and foresight. [footnote omitted] [emphasis in original]
While it is true the extreme weather may be considered an “act of God”, the injuries to Brinson were not “occasioned solely thereby”. The “negligent conduct of omission”, failing to advise residents of the precautions they should take, failing to respond within a reasonable time after notice to Byrd of the problem, and failing to provide the residents with a means of turning off their water, makes the Housing Authority liable.
However, Brinson’s own actions were found by the jury to have contributed to the accident. Brinson remained in her apartment for approximately four to five hours after the problem was discovered, attempting to mop up and collect the flow of water. The jury found Brinson thirteen percent at fault and the Housing Authority eighty-seven percent at fault. The Housing Authority argues this allocation is erroneous.
The percentage allocation of fault in a comparative negligence case is a question of fact. Brooks v. City of Baton Rouge, 558 So.2d 1177, 1179 (La.App. 1st Cir.), writ denied, 566 So.2d 982 (1990). As any other question of fact, it should not be disturbed in *1218 the absence of manifest error on the part of the trier of fact. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978).
Brinson’s negligence did contribute to her injuries. Brinson exposed herself to an increasingly greater risk as she remained in her apartment while the water flow continued to increase. Although she was unsure of the origin of the problem and could not identify the source of the water, she knew the water flow was increasing. She had over four hours to consider the growing risks she faced by remaining in the apartment; yet, she did not leave. We find that it was clearly wrong for the trial court to allocate the fault between the Housing Authority and Brinson at eighty-seven percent and thirteen percent, respectively. Brinson must share in a greater percentage of fault.
Considering the factors listed in Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967, 974 (La.1985), we conclude the proper allocation of fault to Brinson is twenty-five percent. Brinson was aware that she faced a danger. She knew water was entering her apartment from an unknown source. Although she could not recognize the exact nature of the risks she faced, she could perceive that, with the increasing flow of water, the risks were also increasing. In addition, she was not required to act in haste; rather, she had over four hours to comprehend the risks she faced and exit the apartment.
ASSIGNMENT OF ERROR NO. 4
In its next assignment of error, the Housing Authority argues the award of damages to Brinson is excessive. It is well-settled that before an appellate court can disturb an award made by a trial court, the record must clearly reveal that the trier of fact abused its discretion. Reck v. Stevens, 373 So.2d 498, 501 (La.1979); Coco v. Winston Industries, Inc., 341 So.2d 332, 335 (La.1976). The Supreme Court in the recent case Hae Woo Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), reiterated the rule of law recognizing the “vast” discretion afforded the factfinder, and the absolute necessity to find an abuse of this discretion before an appellate court may alter a general damage award.
The jury determined Brinson’s damages to be $38,700.00 for past and future medical expenses, $25,000.00 for loss of earning capacity, and $31,600.00 for pain and suffering, for a total of $95,300.00. This amount was reduced by her percentage of fault, and Brin-son was awarded $82,911.00.
We do not find an abuse of the vast discretion of the trial court in the award of $31,600.00 for pain and suffering, nor in the $25,000.00 for loss of earning capacity. Although these awards may be high, they are not an abuse of the factfinder’s discretion.
However, the award of $38,700.00 for past and future medical is excessive and not supported by the record. Future medical expenses are a legitimate form of recovery, even though they are not susceptible of precise mathematical calculations. However, awards will not be made in the absence of medical testimony that they are indicated and setting out their probable cost. Holliday v. United Services Auto. Ass’n., 569 So.2d 143, 146 (La.App. 1st Cir.1990).
Brinson had accumulated approximately $3,700.00 in medical bills at the time of trial. Testimony at trial by Dr. Warren Williams, Brinson’s treating physician, recounted Brin-son’s medical condition and expenses to date. Dr. Williams stated Brinson would need continued office visits for her injuries, medicine, and other non-surgical treatments; however, he did not consider Brinson a candidate for surgery.
While the record does support an award for future medical expenses, the record does not establish the cost of future treatment. We do have the medical bills that were admitted into the record, and they may be used to conclude what award for future medical expenses would be supported by the record. Holliday, 569 So.2d at 147; Davis v. Husqvama Motor, 561 So.2d 847, 855 (La. App. 2nd Cir.), writ denied, 569 So.2d 958 (1990). We find the highest amount which reasonably could have been awarded under the circumstances for this element of damages is $13,700.00.
*1219 ASSIGNMENT OF ERROR NO. 5
The Housing Authority also argues the jury verdict should be set aside based on La.R.S. 13:5105, which states:
No suit against the state or a state agency or political subdivision shall be tried by jury.
Appellant maintains the cases of Descant v. Rapides Parish Police Jury, 409 So.2d 1226 (La.1982), and Scott v. Clark, 583 So.2d 938, 942 (La.App. 1st Cir.1991), which hold the statutory prohibition mandatory, control. However, these cases are distinguishable since in both, the jury order was struck before trial.
The cases of Simmons v. Beauregard Parish School Board, 315 So.2d 883, 885 (La.App. 3rd Cir.), writ denied, 320 So.2d 207 (1975), and Callahan v. Town of Bunkie, 287 So.2d 629, 636 (La.App. 3rd Cir.1973), writ not considered, 290 So.2d 905 (1974), are controlling. In these cases, as in the instant case, the governmental defendant sought relief from an adverse judgment rendered by a jury consented to by all parties. The Third Circuit held in both cases that the failure to object to a jury trial before the trial began was a waiver of the right to object to a trial by jury. We agree. Once liability has been validly determined and assessed, it would be an injustice to allow the defendant to escape liability on this basis. As stated in Callahan, 287 So.2d at 636, this would “allow the state or other public body to have ‘two bites at the apple.’ ”
CONCLUSION
For the above reasons, the judgment of the trial court is amended to apportion fault seventy-five percent against the Housing Authority and twenty-five percent against Brin-son, and to reduce the award for past and future medical expenses to $13,700.00. Accordingly, the judgment in favor of Shirley Brinson is amended to award her the total amount of $52,725.00. The judgment of the trial court is affirmed in all other respects. The costs of this appeal total $400.79. Defendant is to pay seventy-five (75%) percent thereof, in the amount of $300.59. Brinson is to pay twenty-five (25%) percent of the appeal costs, in the amount of $100.20.
AMENDED, AND AS AMENDED, AFFIRMED.
GONZALES, J., dissents and assigns reasons.
CARTER, J., dissents and assigns additional reasons.

. In plaintiff's petition and throughout the record the defendant, Louisiana Housing/Morgan City, is incorrectly identified as the Morgan City Housing Authority. For consistency, we will refer to the defendant simply as the "Housing Authority”.

. Although there was contradictory testimony as to the existence and publication of an "emergency” number for residents to use, Ms. Mittie Byrd, a member of the board, testified Brinson contacted her some four hours before the accident occurred. During that four hours, Brinson and Byrd repeatedly tried to contact the Housing Authority. Wendell Bogan, Executive Director for the Housing Authority, testified a private answering service intercepts and relays calls to the Housing Authority after hours and on the weekends. It was unexplained why Brinson and Byrd were unable to reach someone during the four hours.

. Although the pleadings by the plaintiff only asserted a defect on the premises as the basis of her claim, both the evidence and testimony at trial, and the jury instructions, enlarge the pleadings to include ordinary negligence. Both parties introduced testimony relating to the alleged negligence by the Housing Authority. In addition, the judge’s instructions specifically addressed both theories of recovery and the defendant did not object to these instructions.

. La.C.C. art. 2695 states:
The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.

. La.C.C. art. 2315 provides, in pertinent part:
Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.